**Abel Osarentine OVIAWE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 87–1853.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1988.

Decided Aug. 10, 1988.

Diana Kenney, Carper & Rubesh, Chicago, Ill., for petitioner.

Charles E. Pazar, Office of INS and Litigation, Civ. Div., U.S. Dept. of Justice, Washington D.C., for respondent.

Before CUMMINGS, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Abel Osarentine Oviawe, an alien residing in the United States, petitions for review of a final decision of the Board of Immigration Appeals (BIA) denying his motion to reopen deportation proceedings in order to consider his application for adjustment of status. Mr. Oviawe previously had been found deportable for overstaying the time authorized in his visa in violation of 8 U.S.C. § 1251(a)(2) (authorizing deportation of any alien who "is in the United States in violation of any ... law of the United States"). For the reasons set forth in this opinion, we deny the petition for review and affirm the decision of the BIA.

I

### Background

Mr. Oviawe is a citizen of Nigeria. On May 25, 1979, he came to the United States on a business visa with an expiration date

of July 10, 1979. He did not depart on that date, nor has he ever left the United States. In June 1982, he married an American citizen. On October 7, 1982, Mrs. Oviawe filed a relative immigrant visa petition on Mr. Oviawe's behalf; at the same time, Mr. Oviawe filed an application for status as a permanent resident. Later that same month, he was indicted for mail fraud in violation of 18 U.S.C. § 1341 and for knowingly and fraudulently claiming to be a United States citizen in violation of 18 U.S. C. § 1001. He pleaded guilty to both offenses and the district court imposed a sentence of five years probation. The sentencing judge recommended, on the authority of 8 U.S.C. § 1251(b)(2),[1] that the Immigration and Naturalization Service (INS) not deport Mr. Oviawe on the basis of these convictions.

On February 22, 1983, the Chicago District of the INS denied Mr. Oviawe's application for permanent residency. Then, on March 21, 1983, the INS sought deportation of Mr. Oviawe on the ground that he had overstayed his 1979 visa. A hearing before an immigration judge followed. At his deportation hearing, Mr. Oviawe admitted that he had overstayed his visa and conceded that he was deportable as a result. The judge found Mr. Oviawe deportable, but permitted him voluntary departure until June 20, 1983. Mr. Oviawe did not appeal this decision to the BIA. Instead, Mr. Oviawe applied for an extension of his departure date. The application was denied. Mr. Oviawe did not voluntarily depart by June 20, 1983, and the INS issued a warrant for his deportation. The warrant ordered Mr. Oviawe to surrender himself for deportation on July 12, 1983. He never complied with the order and, instead, now

contends that he never received notice of the warrant. In November 1983, Mrs. Oviawe gave birth to a son. Mr. Oviawe ultimately was apprehended by the INS on April 16, 1985. Thereafter, he filed a motion to stay his deportation with the Chicago District of the INS.

On April 22, 1985, in a parallel proceeding to the deportation matter, the INS approved the relative immigrant visa filed by Mrs. Oviawe on October 7, 1982. In effect, this approval permits Mr. Oviawe, if deported, to apply for an immigrant visa at the American Embassy in Lagos, Nigeria. However, on April 24, 1985, the INS denied the motion to stay deportation. On July 3, 1985, Mr. Oviawe filed a motion to reopen the deportation proceeding in order to permit an adjustment of status to that of a permanent resident. He based his motion upon his marriage, his child, and the approved petition of April 22, 1985. An immigration judge denied the motion. Mr. Oviawe appealed to the BIA. The BIA affirmed the decision of the immigration judge not to reopen the proceedings. Mr. Oviawe now petitions for review of that decision.

## II

### Opinion of the BIA

In upholding the decision of the immigration judge to deny reopening of Mr. Oviawe's deportation proceedings, the BIA held that Mr. Oviawe "has failed to establish that, as a discretionary matter, these proceedings should be reopened. He has failed to make a prima facie showing that his application for adjustment of status would be granted in the exercise of discretion.[2] Although the respondent's United

1. Section 1251(b)(2) of Title 8 of the United States Code provides in relevant part:
   (b) The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply ... (2) if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Ser-

vice, and prosecution authorities, who shall be granted an opportunity to make representations in the matter.
8 U.S.C. § 1251(b)(2).

2. In *INS v. Abudu,* —— U.S. ——, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988), the Supreme Court noted:
   There are at least three independent grounds on which the BIA may deny a motion to reopen. First, it may hold that the movant has not established a prima facie case for the underlying substantive relief sought.... Second, the BIA may hold that the movant has

States citizen wife and son are significant equities, they are outweighed by the adverse factors of record." *In re Oviawe*, No. A23 133 027—Chicago, order at 5 (BIA Jan. 21, 1987) [hereinafter Order]; R. at 18. The BIA set forth two adverse factors: First, Mr. Oviawe failed timely to depart the United States; and second, he had been convicted for mail fraud and for knowingly making false statements.[3] The BIA concluded that Mr. Oviawe's "deliberate flouting of our laws," *id.* at 6, precluded him from obtaining the extraordinary relief that he sought.

## III

### Discussion

#### A. *General Standard of Review*

We have jurisdiction to review "all final orders of deportation." 8 U.S.C. § 1105a(a). This authority, with exceptions not applicable here, extends to a denial of a motion to reopen. *Variamparambil v. INS*, 831 F.2d 1362, 1364–65 (7th Cir.1987); *Diaz–Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir.), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983); *Villena*

*v. INS*, 622 F.2d 1352, 1358–59 (9th Cir. 1980) (en banc); *see Giova v. Rosenberg*, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam). In reviewing a final order of the BIA, we previously have noted, "[t]he discretion of immigration officials is exceptionally broad. The Supreme Court recently suggested that it is absolute." *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1264 (7th Cir.1985) (interpreting *INS v. Phinpathya*, 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 588 n. 6, 78 L.Ed.2d 401 (1984), which stated in dictum that the disposition of a motion to reopen "is entirely within the BIA's discretion"); *see INS v. Abudu*, —— U.S. ——, 108 S.Ct. 904, 911–13, 99 L.Ed.2d 90 (1988);[4] *INS v. Rios–Pineda*, 471 U.S. 444, 449, 105 S.Ct. 2098, 2101, 85 L.Ed.2d 452 (1985); *INS v. Bagamasbad*, 429 U.S. 24, 24–25, 97 S.Ct. 200, 200–201, 50 L.Ed.2d 190 (1976) (per curiam). Accordingly, we have fashioned a standard of review that is especially deferential to final decisions of the BIA:

> The scope of our review is extremely narrow. We recently decided that the denial of a motion to reopen will be overturned only if it (1) was made without a

not introduced previously unavailable, material evidence, 8 C.F.R. § 3.2 (1987).... We decide today that the appropriate standard of review of such denials is abuse of discretion. Third, in cases in which the ultimate grant of relief is discretionary ..., the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief. We have consistently held that denials on this third ground are subject to an abuse-of-discretion standard. *Id.*, 108 S.Ct. at 911–12. It is clear from a reading of the entire order that the BIA based its determination on whether Mr. Oviawe, as a matter of discretion, would be entitled to relief.

**3.** The immigration judge who denied Mr. Oviawe's motion to reopen did so on somewhat different grounds. He did not consider the mail fraud or false statement convictions. *In re Oviawe*, No. A23 133 027—Chicago, decision at 3 (IJ Aug. 27, 1985); R. at 52. Instead, in addition to considering the failure to depart timely, the judge also considered (1) that it was alleged Mr. Oviawe was involved in a fraudulent visa petition concerning his cousin; and (2) that it was alleged Mr. Oviawe had lied about his age

before the district court at sentencing for his criminal conviction. *Id.* at 3–4. The judge determined that this evidenced "an alien who is willing to bend and break laws to accomplish his own goals." *Id.* at 4. Of course, we review the decision of the BIA, not the immigration judge. *See Argueta v. INS*, 759 F.2d 1395, 1398 n. 4 (9th Cir.1985).

**4.** In reaffirming the validity of this deferential standard to discretionary decisions of the BIA, the Supreme Court recently held:

> "'If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case. It will also waste the time and efforts of immigration judges called upon to preside at hearings automatically required by the prima facie allegations[, a requirement not disputed in this case].'"

*Abudu*, 108 S.Ct. at 913 (quoting *INS v. Jong Ha Wang*, 450 U.S. 139, 144 n. 5, 101 S.Ct. 1027, 1031 n. 5, 67 L.Ed.2d 123 (1981) (quoting *Villena v. INS*, 622 F.2d 1352, 1362 (9th Cir.1980) (en banc) (Wallace, J., dissenting))).

rational explanation, (2) inexplicably departed from established policies, or (3) rested on an impermissible basis such as invidious discrimination against a particular race or group. *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985). The [BIA's] decision need only be reasoned, not convincing. *Id.* at 1266. And although in a motion to reopen an alien must show prima facie eligibility for the relief he seeks, *Diaz–Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir.), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983), the INS has the discretion to deny a motion to reopen even if the movant has made out a prima facie case.

*El–Gharabli v. INS*, 796 F.2d 935, 937 (7th Cir.1986) (per curiam) (footnote omitted); *accord Shahandeh–Pey v. INS*, 831 F.2d 1384, 1387 (7th Cir.1987); *Hernandez–Patino v. INS*, 831 F.2d 750, 752 (7th Cir. 1987); *Patel v. INS*, 811 F.2d 377, 382 (7th Cir.1987).

Here, as already noted, the BIA relied on two principal grounds for upholding the decision of the immigration judge to deny Mr. Oviawe's motion to reopen on discretionary grounds: (1) that Mr. Oviawe violated the immigration judge's order to depart voluntarily; and (2) that he committed criminal acts soon after he arrived in the United States. Order at 6. The BIA's consideration of the second issue, the criminal convictions, raises a preliminary question of law—involving statutory construc-

tion and a conflict in the courts of appeals—that we must resolve *de novo*. We turn first to that question.

### B. *Applicability of Judicial Recommendation Against Deportation*

Section 1251(a)(4) of Title 8 of the United States Code provides in relevant part that an alien is to be deported if he is "convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more...." 8 U.S.C. § 1251(a)(4). It is not disputed that the crimes of which Mr. Oviawe was convicted involve moral turpitude. Section 1251(b)(2), however, makes § 1251(a)(4) inapplicable "if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported...." 8 U.S.C. § 1251(b)(2).

If the INS had sought deportation under § 1251(a)(4), the district court's recommendation to the contrary may have operated as a complete bar to such an action.[5] 8 U.S.C. § 1251(b)(2); *see Giambanco v. INS*, 531 F.2d 141, 147 (3d Cir.1976); *Jew Ten v. INS*, 307 F.2d 832, 835 (9th Cir.1962), *cert. denied*, 371 U.S. 968, 83 S.Ct. 551, 9 L.Ed. 2d 538 (1963). However, the INS seeks deportation under 8 U.S.C. § 1251(a)(2) which, *inter alia*, makes an alien deporta-

---

**5.** Although it did not make the argument before the district court at the time of sentencing, the INS now makes passing reference to the possible inapplicability of the judicial recommendation. It notes that Mr. Oviawe was not sentenced to at least one-year confinement—a requirement for deportation under the applicable part of § 1251(a)(4). Appellee's Br. at 17 n. 15. Yet, it also states that the appellant's reliance on *Giambanco v. INS*, 531 F.2d 141 (3d Cir.1976), is "arguably relevant." Appellee's Br. at 16. Under these circumstances, we decline to consider the government's argument. As we recently have noted:

Rule 28(a)(4) of the Federal Rules of Appellate Procedure mandates that an appellant must present in its brief the issues to the appellate court that the appellant desires to litigate. In addition, the issues must be supported by appropriate judicial authority. *Id.;*

*see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984 (1987). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Sanchez*, 792 F.2d at 703.

*Beard v. Whitley County REMC*, 840 F.2d 405, 408–09 (7th Cir.1988); *accord Sere v. Board of Trustees*, 852 F.2d 285, 287 (7th Cir.1988). The strictures of Rule 28(a)(4) apply with equal effect to appellees as well as appellants. Fed.R. App.P. 28(b). Accordingly, the INS' cryptic allusions to the point hardly fulfill its obligations, and we decline to base our decision on a point that has not been presented squarely and completely.

ble for overstaying the time authorized by his visa to remain in the United States.[6] Therefore, the issue presented here is whether the BIA can consider the convictions, notwithstanding the judicial recommendation against deportation, as an adverse factor in a motion to reopen deportation proceedings originally based on another subsection of the statute.

Two circuits have ruled squarely on this matter and have come to different conclusions.[7] *Compare Delgado–Chavez v. INS,* 765 F.2d 868, 870 (9th Cir.1985) (per curiam) (holding BIA can consider § 1251(a)(4) conviction as an adverse factor) *with Giambanco,* 531 F.2d at 149 (holding BIA cannot consider § 1251(a)(4) conviction as an adverse factor). Both *Giambanco* and *Delgado–Chavez* involve factual situations that are similar to each other and similar to this case. In each case, an alien was convicted of a crime involving moral turpitude. In each case, there was a judicial recommendation against deportation based on the conviction. Nevertheless, the INS sought, and obtained, deportation of the alien on other statutory grounds. On appeal, the BIA considered the moral turpitude crimes as an adverse factor in reviewing the petitioners' motions for relief from the deportation proceedings. In *Gi-*

*ambanco,* the Third Circuit noted that the legislative history of § 1251(b)(2) is silent as to whether such consideration is appropriate. However, the court determined that the BIA ought not consider § 1251(a)(4) convictions, for any reason, once a court recommends no deportation on that ground. The court summarized:

> Accordingly, in order (1) to maintain the integrity of the deportation recommendation of the trial judge; (2) to have the discretionary determination made by the actor best able to make it; and (3) to avoid a possibly unjust penalization of aliens such as Giambanco, we hold that the Service cannot take into account as a matter of discretion under section [1251] Giambanco's prior fraud conviction in determining whether he is entitled to adjustment of deportation status.

531 F.2d at 149. In contrast, the Ninth Circuit in *Delgado–Chavez* determined that the BIA can consider a conviction for a crime of moral turpitude as an adverse factor. In disagreeing with *Giambanco, the Delgado–Chavez* court reasoned:

> The court in *Giambanco* maintained that allowing the INS to consider a conviction in adjustment of status proceedings when there is a recommendation against using the conviction as a basis

---

**6.** Section 1251(a)(2) of Title 8 of the United States Code states in pertinent part:

> (a) Any alien in the United States ... shall, upon the order of the Attorney General, be deported who—
>
> ....
>
>    (2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of any other law of the United States...."

8 U.S.C. § 1251(a)(2).

**7.** The government contends that there is another case that directly supports its position here: *Jew Ten v. INS,* 307 F.2d 832 (9th Cir.1962), *cert. denied,* 371 U.S. 968, 83 S.Ct. 551, 9 L.Ed.2d 538 (1963). However, while *Jew Ten* does support the position of the INS that the plain language of § 1251(b) is inapplicable to deportation based on *any* ground *other* than § 1251(a)(4), the facts of the *Jew Ten* case are quite different from the instant case. *Jew Ten* involved an alien who was deportable under § 1251(a)(13) (facilitating illegal entry of others into the United States). Although the alien also had been convicted of a crime of moral turpitude previ-

ously, "the only significance attached to [that conviction] was that the conviction had made it easier for [the INS] to prove that petitioner did in fact commit acts proscribed by § [1251](a)(13)." *Id.* at 835. Moreover, as the *Jew Ten* court explicitly noted:

> "The sole Conclusion of Law reached by the Special Inquiry Officer reads:
>
>    1. That under Section [1251](a)(13) * * * the [petitioner] is subject to deportation on the ground that prior to or at the time of any entry, he shall have knowingly and for gain encouraged, induced, assisted, abetted or aided any other alien to enter or try to enter the United States in violation of law."

*Id.* at 835 n. 4 (quoting opinion of BIA). Accordingly, there is no indication that the § 1251(a)(4) conviction was considered as an independent adverse factor. *Compare id. with In re Oviawe,* No. A23 133 027—Chicago, order at 6 (BIA Jan. 21, 1987) ("More serious than [Mr. Oviawe's] failure to depart, however, are his 1983 convictions for using the mails in furtherance of a scheme to defraud and for making false statements to a department of the United States.").

for deportation renders meaningless the provisions of § 1251(b)(2) which provide for notice and an opportunity for a hearing to the INS. *Id.* While this argument is not without appeal, *the plain language of § 1251(b)(2) limits its application to deportation proceedings under § 1251(a)(4). Therefore, consideration of Delgado–Chavez's embezzlement conviction in connection with his application for voluntary departure was not erroneous.*

*Id.* at 870 (emphasis supplied).

■ We agree with the view of the Ninth Circuit.[8] The plain language of § 1251(b)(2) permits the judicial recommendation to bar deportation only when the deportation is based on § 1251(a)(4) (conviction of a crime of moral turpitude). It does not forbid the consideration of a conviction as an aggravating factor when deportation is based on another statutory provision. *See Jew Ten,* 307 F.2d at 834 ("As we read § [1251](b), taking cognizance of its history, it can only mean that the sentencing court is limited to making recommendations in § [1251](a)(4) convictions."); *United States v. George,* 534 F.Supp. 570, 571 (S.D.N.Y.1982) ("Under the plain wording of the statute, the judicial recommendation provided for by § 1251(b) is limited to that ground of deportation specified in § 1251(a)(2)[sic].").[9]

As we already have noted, the INS has great discretion in dealing with a motion to reopen. Furthermore, a motion to adjust the status of an alien is an extraordinary remedy. *Jain v. INS,* 612 F.2d 683, 687 (2d Cir.1979), *cert. denied,* 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980); *see also Abudu,* 108 S.Ct. at 913 and n. 11. There-

fore, it is especially important that the INS be informed fully of *all* factors that bear on its exercise of discretion, as long as Congress has not explicitly excluded these factors from consideration. Congress has not done so here. As the BIA correctly has summarized in an earlier case, "[t]he [Immigration and Naturalization] Act nowhere states that the criminal activity and the conviction which resulted therefrom cannot be considered in connection with an application for discretionary relief." *In re Gonzalez,* 16 I & N Dec. 134, 136 (BIA 1977). After the *Gonzalez* decision, Congress twice has amended 8 U.S.C. § 1251. Nevertheless, it has failed to preclude explicitly, or even implicitly, the INS from considering criminal convictions in the manner done here. Under such circumstances, we think it is inappropriate to contravene the plain language of the statute by imposing judicial constraints on the factors that the BIA can consider in exercising its discretion. *Cf. Wiemerslage v. United States,* 838 F.2d 899 (7th Cir.1988) (where Congress is aware of problem, as evidenced by amendments to statute, we will not upset plain language of statute absent express congressional direction). It would be anomalous to conclude, in the absence of explicit statutory language to the contrary, that in granting this extraordinary relief, *see Jain,* 612 F.2d at 687; *see also Abudu,* 108 S.Ct. at 913 and n. 11, the BIA is foreclosed from considering adverse information to balance against positive information when weighing the equities of a situation. As the BIA previously and persuasively has noted:

Had no criminal action been instituted against the respondent, the fact of his

---

**8.** Another case that supports the *Delgado–Chavez* holding, albeit implicitly, is *United States v. George,* 534 F.Supp. 570 (S.D.N.Y.1982). In *George,* the INS sought to deport an alien for overstaying his visa under § 1251(a)(2). Concomitantly with the deportation proceedings, the alien pleaded guilty in a federal district court to a crime of moral turpitude and was sentenced to one year probation. The alien petitioned the district court to recommend that he not be deported. The court refused, holding that under the plain language of § 1251(b), it had no jurisdiction to make such a recommendation since the deportation proceeding was

commenced under a subsection of the statute other than § 1251(a)(4). *Id.* at 571. Accordingly, because the court issued no judicial recommendation against deportation, in effect, it permitted the INS to consider the conviction as an adverse factor—if it so chose—in any post-deportation proceedings requesting discretionary relief.

**9.** It is evident from a reading of the district court's opinion in its entirety that § 1251*(a)(2)* merely is a typographical error which should properly read § 1251*(a)(4).*

involvement in the criminal activity could have been brought out and considered in connection with an application for discretionary relief. The court's ruling in *Giambanco* places him in a position superior to the person who has not been convicted of his crime. Although the fact of his conviction should not preclude him from establishing statutory eligibility for the relief, we are of the opinion that the respondent is neither a person of good moral character nor a person who merits a favorable exercise of discretion.

*Gonzalez,* 16 I & N Dec. at 136–37; *see In re Seda,* 17 I & N Dec. 550, 554 (1980) (conviction may be considered as an adverse factor under discretionary review). Accordingly, we hold that the BIA properly considered Mr. Oviawe's prior criminal convictions of moral turpitude as an adverse factor in exercising its discretion to deny Mr. Oviawe relief.

### C. *Review of the BIA's Decision*

We now review the final decision of the BIA under the abuse of discretion standard. Mr. Oviawe challenges the BIA's decision on several grounds. Basically, he contends, the BIA either considered adverse factors erroneously, or failed to consider positive factors in arriving at its determination. We briefly set forth his contentions and then assess their merits.

First, Mr. Oviawe contends that, at his deportation hearing, the INS failed to consider his marriage. However, this matter was not argued before the BIA and is therefore not properly before us now. In any event, it is clear that the BIA was aware of his marriage to an American. Second, he contends that the BIA erroneously considered a purportedly fraudulent visa petition scheme involving his cousin. As already noted, however, it was the immigration judge who considered the visa petition scheme, see *supra* note 3, and not the BIA, which merely *mentioned* that the INS *alleged* such a scheme. Third, Mr. Oviawe contends that the INS distorted the facts surrounding his convictions for mail fraud and making false statements. Although the BIA did set forth the allegations of the INS in discussing the posture of the case, R. at 15–16, the BIA relied on the language contained in the indictment charging Mr. Oviawe with the crimes to which he pleaded guilty. *Id.* at 19. Moreover, the BIA's summary of the INS' allegations closely track the language of the indictment. *Compare* R. at 15–16 (BIA's summary of INS' contentions) *with* R. at 128–34 (indictment).

Finally, Mr. Oviawe contends that the INS was guilty of willful misconduct in delaying approval of his relative immigrant visa petition for two and one-half years. The INS has moved to strike this argument and, in the alternative, has moved for leave to respond. In its motion, the INS alleged that Mr. Oviawe did not raise this issue in his opening brief before this court. However, Mr. Oviawe's initial brief, while not employing the label "affirmative misconduct," sets forth the same argument found in his reply brief. *Compare* Appellant's Br. at 5–7 *with* Appellant's Reply Br. at 9. Accordingly, the motion to strike the argument is denied.

■ Turning to the merits of Mr. Oviawe's claim of affirmative misconduct, we find no basis for relief. He relies on two Ninth Circuit cases in which affirmative misconduct by the INS, in the form of inexcusable delay in processing visa petitions, resulted in denial of those petitions. *See Villena v. INS,* 622 F.2d 1352 (9th Cir.1980) (en banc); *Sun Il Yoo v. INS,* 534 F.2d 1325 (9th Cir.1976). *But see Jaa v. INS,* 779 F.2d 569 (9th Cir.1986). Here, in contrast, Mr. Oviawe was *granted* his relative immigrant visa. Unlike the Ninth Circuit cases, Mr. Oviawe was not prejudiced by the delay. His deportable offense, failure to timely depart, arose well before he even applied for an immigrant visa. In addition, only five months elapsed between Mr. Oviawe's petition for a visa and the INS' commencement of deportation proceedings. As the Supreme Court noted in *INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (per curiam):

> Even if the INS arguably was negligent in not acting more expeditiously, ... neither the Government's conduct nor the harm to the respondent is sufficient to

estop the Government from enforcing the conditions imposed by Congress for residency in this country.

*Id.* at 18, 103 S.Ct. at 283.

### Conclusion

All immigration cases are hard cases because they affect, profoundly, the lives of many. Here, however, it is clear that the BIA acted well within its discretion in refusing to reopen this proceeding. Having reached that conclusion, our task is completed. The petition for review is denied. The order of the Board is affirmed.

IT IS SO ORDERED.