**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank James WILLIAMS and Tedric Beverly, Defendants–Appellants.**

Nos. 88–1389, 88–1390.

United States Court of Appeals, Seventh Circuit.

Argued March 27, 1989.

Decided June 6, 1989.

As Corrected July 19, 1989.

See also 699 F.Supp. 1256.

Richard F. Walsh, Chicago, Ill., for defendants-appellants in No. 88–1389.

Anton Valukas, U.S. Atty., David J. Stetler, Chief, Criminal, James R. Ferguson, Deputy, Victoria J. Peters, Deputy, Chris C. Gair, James Conway, Asst. U.S. Attys., for plaintiff-appellee in both cases.

Walter Jones, Jr., Chicago, Ill., for defendants-appellants in 88–1390.

Before BAUER, Chief Judge,
KANNE, Circuit Judge, and HENLEY,
Senior Circuit Judge.*

BAUER, Chief Judge.

On December 14, 1987, the grand jury charged defendants Frank Williams and Tedric Beverly, along with Larry Taylor, in a six-count superseding indictment. Count One charged all three defendants with conspiracy to rob the Gainer Bank in Hammond, Indiana in violation of 18 U.S.C. § 371. Count Two charged Williams with solicitation to commit robbery in violation of 18 U.S.C. § 373. Count Three charged Williams and Beverly with carrying an explosive during the commission of a felony in violation of 18 U.S.C. § 844(h). Count Four charged Williams with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g). Counts Five and Six charged Williams and Beverly with possession of a firearm in violation of 26 U.S.C. §§ 5861(d) and (i), and § 5871.

The jury found Williams and Beverly guilty of all counts with which they were charged, but acquitted Taylor. The court sentenced Williams to eight years imprisonment and five years probation, and Beverly to three years imprisonment and five years probation. This is Williams's and Beverly's appeal, in which they allege that the trial court committed numerous errors warranting reversal of their convictions. For the

---

* The Honorable J. Smith Henley, Senior Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

following reasons, we affirm both convictions.

## I.

On May 11, 1987, Desiree Jones, a police informant, contacted Sergeant George Murray of the Illinois State Police and told him that Frank Williams was planning to rob a bank. Murray directed Jones to tell Williams that "Tony" (Murray's undercover identity) was interested in robbing a bank. The next day, Williams called Murray and arranged a meeting for May 14, at which time Williams explained his plan and told Murray that Murray's job would be to provide a getaway car. Five days later, Williams and Murray met again. At this meeting, Williams introduced Taylor to Murray as another participant in the plan. The three men then drove to the Gainer Bank and "cased" it from the outside. Williams said that they would need money for weapons, but Murray refused to provide funds. Williams also stated that he knew someone named Beverly, who could make pipe bombs which they could use to create a diversion.

On May 26, Williams and Murray met for the third time. Williams told Murray that they were going to go find Beverly, the "diversion man". When Williams spotted Beverly, he got out of the car, talked to him briefly, and returned to tell Murray that Beverly had agreed to be the "diversion man". Williams also told Murray that he was going to pay Beverly $2000. When Beverly approached the car, Murray added that he would throw in an additional $200 up front to show that he "meant business". (According to Murray, he made this offer to ensure that the two of them would not commit the robbery without his knowledge.) Murray and Williams then left Beverly and drove to the Gainer Bank so Williams could "case" it.

Williams, Murray, and Beverly met again the next evening. Beverly brought a "demonstration" bomb with him. (An explosives expert testified that this bomb consisted of potassium nitrate, sulfur, sugar, charcoal and coal, and that it would cause serious personal injury and probably start

a fire). They drove around for a while and then stopped at a liquor store. Murray paid for beer and wine and then drove to a hotel where Williams and Beverly were arrested. When arrested, Williams had a .38 caliber revolver and a sawed off shotgun in his possession. Beverly was carrying the homemade bomb.

## II.

■ Williams challenges his conviction on two grounds, the first of which is that the district court improperly excluded certain testimony as hearsay. There are a number of problems with this assertion, the first being that Williams has failed to identify for this court the testimony he sought to have admitted at trial. In his brief, Williams alleges nothing more specific than that the court should have admitted "certain conversations" between Greg Jones, the brother of Desiree Jones, and himself. Not surprisingly, because Williams has failed to identify these "certain conversations", he also has failed to present an argument in support of his claim that the excluded statements were not hearsay. His analysis is nothing more than a claim that these "conversations" were not hearsay because he offered them not to prove the truth of the matter asserted, but to show his lack of intent or, in the alternative, that he was entrapped.

This conclusory allegation does not satisfy the requirements of Rule 28(a)(4) of the Federal Rules of Appellate Procedure. As we have stated time and again:

> Rule 28(a)(4) of the Federal Rules of Appellate Procedure mandates that an appellant must present in its brief the issues to the appellate court that the appellant desires to litigate. In addition, the issues must be supported by appropriate judicial authority. *Id.; see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir.1986); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.1986), *cert. denied*, 479 U.S. 1056 (1987). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are rep-

resented by counsel." *Sanchez*, 792 F.2d at 703.

*Beard v. Whiley County REMC*, 840 F.2d 405, 408–09 (7th Cir.1988); *Sere v. Board of Trustees*, 852 F.2d 285, 287 (7th Cir.1988); *Oviawe v. I.N.S.*, 853 F.2d 1428, 1431 n. 5 (7th Cir.1988); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1025–26 (7th Cir.1988). In this case, Williams has failed even to identify the facts necessary to support the issue he raises. Although the United States Attorney has made a fine attempt to identify the "certain conversations" that Williams claims should have been admitted, this is not the government's responsibility. Neither this court nor the United States Attorney has a duty to comb the record in order to discover possible errors. Williams, therefore, has waived this issue.

 In his second argument, Williams claims that the district court's pretrial ruling that Williams could not ask Murray whether Greg Jones recruited his sister to act as an informant or where Greg Jones lived at the time of the offense violated his Sixth Amendment right to confront witnesses against him. The Sixth Amendment, however, guarantees a defendant the opportunity for *effective*, not limitless, cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination...." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). In this case the district court's ruling clearly was not an abuse of that discretion. We disagree with Williams's claim that the questions he was prevented from asking would have established either that Murray was lying or that he was negligent in supervising his informers. The jury was afforded ample opportunity to assess Murray's credibility as a witness. *See United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir.1987) (Sixth Amendment is violated only if jury is prevented from making a discriminating appraisal of the witness' testimony). With respect to the claim that Murray was negligent in supervising his

informers, Williams has failed to demonstrate how, even if it were true, this assertion is relevant to his defense.

### III.

Beverly contends that the court's failure to instruct the jury on the entrapment defense deprived him of a fair trial. In accordance with the then-prevailing law of this circuit, the court refused the tendered entrapment instruction because Beverly refused to admit all elements of the offenses, including intent. Following the trial, the Supreme Court held in *Mathews v. United States*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed. 2d 54 (1988), that a defendant may raise the entrapment defense even if he denies committing all elements of the offenses charged. Beverly contends that *Mathews* compels a reversal of his convictions.

*Mathews*, however, does not hold that a defendant is *always* entitled to an entrapment instruction; it holds that a defendant is entitled to the instruction "whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Id.* 108 S.Ct. at 886. Because no reasonable jury could have found that Beverly was entrapped, the district court correctly refused, albeit for the wrong reason, to give the tendered instruction.

In *United States v. Kaminski*, 703 F.2d 1004 (7th Cir.1983), this court identified several factors which are relevant to determining whether a defendant was entrapped:

the character of the defendant, including any prior criminal record; whether the suggestion of criminal activity was initially made by the Government; whether the defendant was engaged in the criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome only by repeated Government inducement or persuasion; and the nature of the inducement of persuasion supplied by the Government.

*Id.* at 1008.

 The application of these factors to Beverly's situation demonstrates beyond a doubt that he was not entrapped. First,

government inducement was non-existent in this case. The suggestion to create a diversion and contact someone who knew how to make bombs came from Williams. Williams, not Sergeant Murray, recruited Beverly to participate in the crime. Further, Murray offered Beverly $200 in earnest money *after* he had already agreed to make the bomb. Second, rather than evidencing any reluctance to join the criminal endeavor, Beverly demonstrated "considerable enthusiasm" in pursuing the conspiracy. *Id.* at 1009. Beverly asked Williams whether the present plan was part of the same plan the Williams had brought to him months earlier to "blow up something." Beverly then told Murray that on this prior occasion he had said, "if that's what you need me to do, then you can count on me. When you get ready ... gimme a week notice." Beverly also repeatedly assured Murray that he was a demolitions expert. On his own initiative, Beverly made a "demonstration" bomb. He also recommended a refinement of the diversion plan, suggesting that a library would be an easier target.

In sum, no evidence in the record supports Beverly's claim that he was entrapped. Because Beverly failed to produce any evidence of government inducement and his own lack of predisposition, he was not entitled to an entrapment instruction. *United States v. Hawkins*, 823 F.2d 1020, 1024 (7th Cir.1987); *United States v. Buishas*, 791 F.2d 1310 (7th Cir.1986); *United States v. Manzella*, 791 F.2d 1263 (7th Cir.1986).

The convictions of both defendants are AFFIRMED.