**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph W. SALADINO, Defendant–
Appellant.**

**No. 04–1831.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 5, 2004.

Decided Dec. 6, 2004.

Keith C. Syfert, Office of the United
States Attorney, Rockford, IL, for Plain-
tiff–Appellee.

James W. Reilley, Arlington Heights,
IL, for Defendant–Appellant.

Before EASTERBROOK, MANION,
and SYKES, Circuit Judges.

## ORDER

Joseph Saladino, a felon, was arrested in Rockford, Illinois on February 15, 1997, for driving under the influence. A search of his car revealed several handguns in his trunk, including an automatic pistol. He pleaded guilty in Illinois state court to the possession of these guns and received two years' probation. Several years later, shortly before the federal limitations period ended, the United States filed an indictment against Saladino under the federal felon-in-possession of a firearm statute, 18 U.S.C. § 922(g)(1), and the federal statute relating to possession of machine guns, 18 U.S.C. § 922(o)(1), based on the same incident. Saladino was then arrested and eventually entered a conditional plea of guilty to both counts. Saladino appeals, claiming that the federal charges cannot stand because the federal government promised to forego the charges. He also contends that pre-indictment and post-indictment delays prejudiced him. We affirm.

### I.

The facts relating to Saladino's crime in this case are not in dispute. The Illinois State Police stopped Saladino in the early morning hours of February 15, 1997, in Rockford, Illinois for erratic driving. After observing slurred speech and Saladino's inability to recite the alphabet, an Illinois state trooper arrested Saladino for driving under the influence of alcohol. The trooper then conducted an inventory search of Saladino's car, during which he discovered three firearms in the trunk. Specifically, the trooper found: (1) a .357 Colt Magnum revolver; (2) a .380 Auto Caliber Colt semi-automatic pistol; and (3) a 9 mm Luger caliber Cobray machine pistol without a serial number. The trunk also contained a 33–round clip for the automatic pistol, over 400 rounds of ammunition for the guns, two books about making silencers, a book on machine lathes, a billy club, two "slim jims," two bolt cutters, a tree trimming saw, one butcher knife, a pipe wrench, a stocking cap, and two face masks.

Because Saladino had a 1964 felony conviction of rape, he was subject to both state and federal charges of felon-in-possession of a firearm. Illinois charged him in the Circuit Court of Winnebago County with Unlawful Use of Weapon by a Felon, 720 ILCS § 5/24–1.1, and also referred the matter to the United States Attorney's Office in Rockford. The U.S. Attorney's Office chose not to pursue the matter at that time and informed the state prosecutor, Mark Karner, of that intention. Karner then told Saladino's attorney that he had discussed the matter with the U.S. Attorney's Office and that Karner did not believe that the U.S. Attorney's Office would prosecute Saladino on the federal charges.

On February 13, 1998, Saladino entered into an "open" plea agreement in the state court. Saladino agreed to plead guilty to Unlawful Use of Weapons by a Felon and, in exchange, the prosecution would not make a sentencing recommendation. The state prosecution also agreed to dismiss the companion charges against Saladino, such as driving under the influence. The state court judge conducted a plea colloquy during which he inquired into Saladino's knowledge and understanding of this agreement. At two different points in this colloquy, the judge specifically asked Saladino whether he relied on any other promises or inducements when entering into the plea agreement. Both times, Saladino responded that he had not relied on anything outside the plea agreement. There were no references to the federal government or federal charges in either the plea agreement or the plea colloquy. The state court

judge sentenced Saladino to two years' probation, alcohol abuse counseling, community service, and a fine.

While the state prosecution had concluded, Saladino was not home free. During an unrelated 2001 investigation, the U.S. Attorney's Office in Chicago conducted a background check on Saladino, which revealed both the 1997 arrest and the state court's sentence of probation. On February 12, 2002, a grand jury indicted Saladino for: (1) violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (2) violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). The first count, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2), charged Saladino with being a felon in possession of firearms, while the second count, pursuant to 18 U.S.C. §§ 922(o)(1) and 924(a)(2), charged Saladino with possession of a fully automatic machine pistol. To prevent Saladino from discovering the ongoing investigation, the government moved to seal of the indictment, which the Northern District of Illinois, Eastern Division granted.[1] Nearly a year later, on January 16, 2003, officers arrested Saladino, and the indictment was unsealed. By agreement of the parties, on February 13, 2003, the case was transferred from Chicago to the Western Division of the Northern District of Illinois in Rockford.

Saladino initially moved to suppress the physical evidence found in the 1997 search, but the district court denied the motion. Saladino subsequently moved to dismiss the indictment on multiple grounds: (1) the U.S. Attorney's Office in Rockford made a "promise" to Saladino that it would not pursue federal charges; (2) the pre-indictment delay prejudiced Saladino's right to a fair trial; and (3) the post-indictment delay prejudiced Saladino's

right to a speedy trial. The district court issued a minute order, which it later elaborated upon in open court, denying the motion to dismiss the indictment. Saladino then entered a conditional plea of guilty to both federal charges, reserving his right to appeal. The court sentenced Saladino to concurrent terms of twenty-seven months' imprisonment.

## II.

On appeal, Saladino challenges the district court's denial of his motion to dismiss the indictment. Saladino repeats his arguments that the federal government made a binding promise not to prosecute as part of the state plea agreement and that the various delays in his federal prosecution prejudiced his rights. Saladino also contends, for the first time, that the sealing of the indictment was improper.

## A.

Saladino initially argues that the federal government made a binding promise to Saladino not to pursue the federal charges as part of the state court plea agreement. Plea agreements are construed according to general contract principles. *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). The terms of Saladino's plea agreement are factual issues for the district court, which this court will only set aside if clearly erroneous. *United States v. Williams*, 198 F.3d 988, 992 (7th Cir.1999). This court reviews the contract for any ambiguity de novo. *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir.1992).

■ In this case, the state court plea agreement has no effect on a subsequent federal prosecution. The plea agreement

---

1. The government made a subsequent motion to extend the "sealing" of the indictment, which the district court granted.

merely details the obligations of Saladino and the state prosecutor regarding the pending state court charges. The text does not address a federal prosecution at all. The plea agreement does not impose any obligations on the federal government or even mention any federal charges. No promises or commitments regarding any potential federal claims were made. Moreover, in general, the federal government is not bound by the terms of a state court plea agreement. *See United States v. Allen,* 930 F.2d 1270, 1274 (7th Cir. 1991). In this case, the plea agreement bound the state to dismiss its charges, but it had no effect on the federal government.

Saladino, however, attempts to bind the federal government to the representations of the state court prosecutor regarding federal prosecution. According to his affidavit, Karner, the state court prosecutor, stated that he believed that the federal government would not pursue charges and communicated this opinion to Saladino. First, Karner did not make any promise regarding federal prosecution, but simply relayed his belief that the federal government would not pursue charges. Moreover, Karner, the state's attorney, had no authority to bind the federal government. *United States v. Fuzer,* 18 F.3d 517, 520 (7th Cir.1994) ("[s]tate prosecutors cannot bind federal prosecutors without the latter's knowledge and consent.").

Furthermore, the colloquy conducted by the state court judge rebuts Saladino's contention. The state court judge repeatedly asked Saladino whether the guilty plea was prompted by any promises outside of the plea agreement. Saladino responded that there were no other promises that he relied upon when making the deal. Saladino's alleged misunderstanding of the terms and the effect of the state plea agreement cannot stop the federal govern-

ment's later prosecution of him. *Allen,* 930 F.2d at 1274.

### B.

Saladino next contends that the pre-indictment delay of nearly five years prejudiced him, violating his due process rights. We review the district court's denial of Saladino's claim of a due process violation arising out of pre-indictment delay for an abuse of discretion. *See, e.g., United States v. Henderson,* 337 F.3d 914, 919 (7th Cir.2003). "For a defendant to successfully assert a due process violation based on an unjustified pre-indictment delay, he must first show that the delay caused actual and substantial prejudice to his right to a fair trial." *United States v. Spears,* 159 F.3d 1081, 1084 (7th Cir.1998).

Saladino fails to point to *any* prejudice from the pre-indictment delay, much less specific and concrete prejudice. *Id.* ("Allegations of prejudice must be specific, concrete, and supported by the evidence.") Instead, Saladino only provides a description of several legal decisions relating to the subject. This is not sufficient. Saladino has provided no factual basis on which this court can rule. It is for Saladino, not this court, to craft his argument. *United States v. Williams,* 877 F.2d 516, 518–19 (7th Cir.1989). Saladino has, therefore, waived the pre-indictment delay issue. *See, e.g., United States v. Mason,* 974 F.2d 897, 901 (7th Cir.1992) ("Without a factual or legal basis before us, we will not consider his bare allegation"); *United States v. Lanzotti,* 205 F.3d 951, 957 (7th Cir.2000); *Williams,* 877 F.2d 518–19; Fed. R.App. P. 28(a)(9)(A).

### C.

Saladino next claims that the post-indictment delay of eleven months violated his right to a speedy trial. In reviewing the

district court's determination that the delay did not infringe Saladino's speedy trial right, we examine the four criteria set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether he suffered prejudice as the delay's result. *See Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

None of the factors are dispositive. *See Barker*, 407 U.S. at 533. The Supreme Court has noted that the need for specific evidence of prejudice, the fourth factor, may be less when the first three *Barker* factors weigh heavily in the defendant's favor. *See Doggett*, 505 U.S. at 654–56. In *Doggett*, for example, the Supreme Court presumed prejudice from an eight and a half year delay, excusing Doggett from showing specific examples of prejudice. *See id.* at 653–54. The Supreme Court, however, also indicated that the success of a speedy trial claim hinged, to a great extent, on the government's conduct.

> If the Government had pursued Doggett with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail. Indeed, that conclusion would generally follow as a matter of course however great the delay, so long as Doggett could not show specific prejudice to his defense.

*Id.* at 656.

■ Against this backdrop, we consider the four *Barker* criteria. First, we turn to the length of the delay. The inquiry into the length of the delay serves two purposes: acting as the gatekeeper to the speedy trial analysis, as well as one of the factors used to determine whether a violation occurred. *See id.* at 651. If the delay

is not excessive, the speedy trial inquiry ends there and does not proceed to a balancing of the other factors. *See id.* at 651–52. The district court here did not abuse its discretion when it found that the eleven month delay did not violate Saladino's right to a speedy trial. It appears that the eleven month delay could qualify as unreasonably long under *Doggett*, which provided that delays "approaching a year" generally trigger the speedy trial analysis. *See id.* at 656, n. 1.

The analysis, however, does not get much further. While Saladino is not responsible for either causing the delay or failing to assert his speedy trial right, the second and third factors in the analysis, the government acted with reasonable diligence. The government delayed only to protect its investigation, which would have been compromised if the indictment had been unsealed earlier. This was a legitimate purpose, not government negligence. *Cf. United States v. Hayes*, 40 F.3d 362, 365–66 (11th Cir.1994). This, by itself, is sufficient under *Doggett*. *See Doggett*, 505 U.S. at 656.

Examining the final criterion, prejudice, Saladino does not counter with examples of specific prejudice to his defense caused by the delay, choosing instead to rely on a presumption of prejudice. Such reliance is misplaced. This was not a case of a multi-year delay in which prejudice would necessarily permeate all aspects of a later defense, as in *Doggett*. Even in cases of lengthy delays, "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria ..." *Id.* Here, the delay period was relatively short (barely triggering the analysis) and the reason for delay was legitimate. Therefore, the district court did not abuse its discretion in weighing the factors and concluding the delay

did not impinge on Saladino's right to a speedy trial.

### D.

Saladino's final challenge on appeal is that the district court improperly sealed the indictment. As he did not raise this issue in the district court, we review for plain error. *United States v. Gray,* 332 F.3d 491, 492 (7th Cir.2003). "Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is 'plain,' and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the errors seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 466–467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal citations omitted). Here, there was no error. The motion to seal was proper under Fed.R.Crim.P. 6(e)(4), which allows a judge to keep an indictment secret until a defendant is in custody, given the government's stated desire to protect the ongoing investigation.

### III.

We do not doubt that Saladino believed that he would not be prosecuted by the federal government on the felon gun possession charges. Unfortunately for him, the federal government did not make any promise to that effect and later decided to prosecute. Neither this nor the delays in prosecution justify setting aside the indictment.

AFFIRMED.