**UNITED STATES of America,**

v.

**Julita DePARIAS, Defendant.**

**No. 85 Crim. 557 (EW).**

United States District Court,
S.D. New York.

April 11, 1986.

Nina Rao Cameron, Sp. Counsel, U.S.I.N.S., New York City, for U.S.

Ruth M. Chamberlin, Federal Defender Services Unit, New York City, for defendant Julita DeParias.

EDWARD WEINFELD, District Judge.

The Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) provides in pertinent part that any alien may be deported who "at any time after entry is convicted of two crimes involving moral turpitude * *." Section 1251(b)(2) provides that the foregoing provision shall not apply if at the time of imposing sentence, or within thirty days thereafter, the Court that imposed the sentence recommends to the Attorney General, after notice and an opportunity to be heard, that such alien not be deported. Julita DeParias, the defendant, convicted of two crimes involving moral turpitude, moves this Court for a recommendation of nondeportation, which is opposed by the Immigration and Naturalization Service acting on behalf of the Attorney General.

Julita DeParias is a native and citizen of Colombia, who entered the United States as a permanent resident alien on August 28, 1970, and has been resident here since that time. Upon her entry into the United States she was eleven years of age; she is now twenty-seven. She has been convicted of two felonies. In August 1985 she was convicted, after a jury trial in the United States District Court for the Southern District of Florida, of extortion and conspiracy to commit extortion. She was sentenced to two consecutive terms of twenty years, a total of forty years, and a $20,000 fine. She is appealing her conviction on those extortion charges.

On January 27, 1986, upon her plea of guilty before this Court, she was convicted of conspiracy to kidnap and was sentenced to a prison term of forty years, to run concurrently with the sentence previously imposed in the Southern District of Florida. In addition, there is a pending indictment in Dade County, Florida, charging her with murder and kidnapping offenses arising out of the events which formed the basis

for the extortion charges referred to above. A detainer has been lodged by the Dade County prosecutor's office, and it is represented that she will soon be placed on trial on those charges. Thus, the defendant, since her arrival in the United States, has within a comparatively short period of time been convicted of two serious crimes, and now faces trial on a murder charge.

Upon a mere recital of these facts, the defendant's application has little to support it. Were the matter to be decided solely on that basis, denial of the application would be indicated. But these matters cannot be decided in a vacuum, upon the isolated facts of the defendant's criminal conduct. Congress, in vesting discretion in the courts to make a recommendation against deportation, recognized that automatic deportation might not be warranted in individual cases.

As in most cases involving persons convicted of crimes for which a term of imprisonment may be imposed and, as in this case, who may be deported to a foreign land, the plight and welfare of persons in no way involved in the defendant's criminal behavior, who are entirely innocent of wrongful conduct, cannot be ignored. While these considerations alone cannot override the public interest, they should be evaluated and a fair balance struck.

The defendant's earliest eligibility for parole, under the present statute, is after she has served one-third of her sentences, approximately thirteen years, at which time she will be forty years of age. But there can be no assurance that in fact she will be released at the earliest eligibility date, particularly considering the nature of her crimes.

The history of the defendant as reported by a psychiatrist who examined her shortly before the sentence was imposed by this Court is one of early rejection, of severe family disruption, paternal alcoholism, maternal depression, and physical and sexual abuse by her father, brothers, and collateral male relatives. Her father was physically and verbally abusive of her mother; alcohol played a significant role in his conduct. Added to this sordid background is the fact that her brother, who was involved in the extortion crime in Florida, was also convicted and is now serving a prison term. Her father, who pled guilty to the crime of receipt of ransom money before this Court, is now serving a sentence of seven years. Another brother, who was indicted with her on the kidnapping charge in this district, is a fugitive from justice.

Her parents are divorced and there was and remains marked hostility between them. Both are alien residents of the United States. After first living with her father in this city, she was reclaimed by her mother, who resides in Miami, Florida. However, the defendant and her siblings were without supervision in the maternal home. The defendant alleges, and the record supports, that she never had a "real" mother and that her home was devoid of love and emotional support. In 1979 she married, but from the start her relationship with her husband was violent and unstable. Two children were born of that marriage, a boy, now age six, and a daughter, now age three. They are native born American citizens who are cared for and raised by their maternal grandmother in Forest Hills, New York. The grandmother is supported by Social Security payments with some financial assistance from the other children. The present whereabouts of defendant's husband are unknown.

The defendant's sole interest appears to be in her children and their welfare. She is remorseful that she cannot raise her children. She apparently talks with them daily from the Metropolitan Correctional Center, but obviously she has played no significant role in their care, and in reality it cannot be said that she is a positive force in their lives.

A prime consideration on this application is the future relationship between the defendant and her children. Assuming her earliest release date from imprisonment is some thirteen or fourteen years from now, the children will at that time be nineteen and sixteen years of age. Each will have been brought up and reared in our tradi-

tions. Colombia is a country with which they have had, up to now, no relationship. It is a foreign land to them. Hopefully, as they grow up they will be law-abiding American citizens receiving the benefits of our educational resources, institutions, and culture. If their mother is deported to Colombia following her release, she will find herself in a foreign land without close family or friends. Two of her siblings reside there, but she has lost contact with them since she left Colombia some sixteen years ago. They have shown no interest or concern for her. Her other siblings are residents of the United States. Upon her release the defendant will have been away from Colombian shores for some thirty years; truly, she would be a person without a country.

The children will then be faced with a grisly choice. If they decide to live with their mother, they must forego the benefits and advantages of our society and leave our shores. If they opt to remain here and stay with the grandmother who has raised them, they will be burdened by the harrowing thought that they have abandoned their mother to a land and life of exile.

After painstaking consideration of the needs and concerns of all parties involved, I am of the view that the public interest will not be adversely affected if the mother remains here, with an opportunity for her and her children to maintain a normal relationship between parent and child. Hopefully, her imprisonment will result in rehabilitative benefits. Indeed, in the period of confinement to date there has been some indication to this effect. While confined at the Metropolitan Correctional Center, she entered a college program and has been of assistance to other inmates. In addition, under the Court's instructions, she is to receive such psychological, psychiatric, and medical treatment as may be indicated. It is to be hoped that with treatment over the years she will upon her release take her place in society and act in conformity with the law. If she fails to live up to the terms of parole, she faces return to imprisonment.

Under all the circumstances, our society can afford the risk of allowing her to re-main in this country to share her life with her children. The application is granted and the Court recommends to the Attorney General, pursuant to 8 U.S.C. § 1251(b), that the defendant not be deported on the basis of the conviction entered against her.

So ordered.