UNITED STATES of America, Plaintiff,

v.

Jamal Issa ALI, Defendant.

Crim. A. No. 89–00112–R/C–01.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Oct. 23, 1990.

Ray Fitzgerald, Richmond, Va., for U.S.

John C. Lowe, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

The matter presently before the Court is defendant Jamal Issa Ali's motion for a judicial recommendation against deportation and exclusion that was filed on Sep-

tember 17, 1990. In the motion, Jamal Issa Ali, through counsel, asks this Court to enter a recommendation, binding upon the Attorney General pursuant to 8 U.S.C. § 1251(b) (1970), that he should not be deported from this country due to the fact that he had earlier pled guilty to a one-count information charging him and his brother and co-defendant, Nidal Issa Ali, with conspiracy to purchase an unregistered machine gun, from which the identifying serial number had been removed, and a silencer for the machine gun. As a basis for his motion, counsel for Jamal Issa Ali believes that the following factors support the entry of a judicial recommendation against deportation: (1) Jamal Issa Ali's youth;[1] (2) his lack of a prior criminal record; (3) his membership in a closely knit, law-abiding family; (4) his history of responsible employment; (4) the fact that his crime is "not major in nature;"[2] and (5) the fact that deportation is a very severe sanction.

As the following pages will reveal more fully, the Court has carefully considered all of the arguments advanced on behalf of defendant Jamal Issa Ali, but has reached the conclusion that, based upon the relevant statutory and case law, this Court does not, in all likelihood, have the authority to recommend to the Attorney General that deportation proceedings should not be commenced against defendant Jamal Issa Ali and, even if the Court did have such power, that a recommendation against deportation would not be appropriate in this case.

### Facts

Defendant Jamal Issa Ali was born in Jerusalem on December 25, 1963. After completing high school, he moved to the United States to join other members of his immediate family, and he has remained in this country for the better part of a decade. Despite the length of his stay in this coun-

1. Born on December 25, 1963, the defendant is presently 26 years old.

2. Contrary to the defendant's assertions through counsel, the Court does view his crime as "major in nature." Essentially, the defendant has pled guilty to attempting to purchase, with $1000.00 in cash, a "machine gun," from which the identifying serial number has been removed, and a "silencer" for that weapon.

try, the defendant has not, however, become a naturalized citizen.[3]

On December 12, 1989, Jamal Issa Ali and his brother Nidal Issa Ali both pled guilty to conspiring to purchase an unregistered machine gun, from which the identifying serial number had been removed, and a silencer for the machine gun. Thereafter, the Immigration and Naturalization Service lodged a detainer against Jamal Issa Ali for possible deportation proceedings, and consequently, counsel for Jamal Issa Ali filed the instant motion with the Court asking that a judicial recommendation against deportation be issued at the date of sentencing, September 24, 1990, or within the ensuing thirty days.

## Legal Analysis

Section 1251(a) of Title 8 of the United States Code provides in pertinent part that any alien in the United States shall, upon the order of the Attorney General, be deported who:

. . . . .

(4) [ (A) ] is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial; or (B) is convicted of an aggravated felony at any time after entry;

. . . . .

(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation, or a conspiracy to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in sec-

tion 102 of the Controlled Substance Act (21 U.S.C. 802));

. . . . .

(14) at any time after entry, shall have been convicted of possessing or carrying in violation of any law any firearm or destructive device (as defined in paragraphs (3) and (4)), respectively, of section 921(a) of title 18, United States Code, or any revolver or any weapon which shoots or is designed to shoot automatically or semi-automatically more than one shot without manual reloading, by a single function of the trigger, or a weapon commonly called a sawed-off shotgun[.]

8 U.S.C. § 1251(a) (1990).

The section sought to be applied by the defendant, and which provides for a binding recommendation against deportation, is section 1251(b) of Title 8 of the United States Code. This subsection provides in pertinent part:

The provisions of subsection (a)(4) of this section respecting the deportation of an alien convicted of a crime or crimes shall not apply ... if the court sentencing such alien for such crime shall make, at the time of first imposing judgment or passing sentence, or within thirty days thereafter, a recommendation to the Attorney General that such alien not be deported, due notice having been given prior to making such recommendation to representatives of the interested State, the Service, and prosecution authorities, who shall be granted the opportunity to make representations in the matter. The provisions of this subsection shall not apply in the case of any alien who is charged with being deportable from the United States under subsection (a)(11) of this section.

8 U.S.C. § 1251(b) (1970); *see United States v. Chinagorom,* No. 90–6309, slip op. at 2–3 (4th Cir. October 9, 1990), [915 F.2d 1565 (table) ].

██ Obviously, this subsection providing for a recommendation against deportation

---

**3.** Interestingly, Jamal Issa Ali's brother and co-defendant, Nidal Issa Ali, is a citizen of the   United States.

(§ 1251(b)) directly refers to only two other subsections: it specifically includes within its scope of operation only § 1251(a)(4) which deals with crimes of moral turpitude and aggravated felonies and it specifically excludes from its scope of operation only § 1251(a)(11) which deals with drug-related offenses. Based upon the clear language of this statute, therefore, the Court believes that only the offenses listed in subsection (a)(4) (crimes of moral turpitude and aggravated felonies) are subject to a judicial recommendation against deportation.[4]

■ Although it has been suggested in other cases that by specifically excluding subsection (a)(11) (dealing with drug-related offenses) from the operation of subsection (b) Congress intended to include all other deportable offenses listed in subsection (a) within the operation of subsection (b), see United States v. Quintana, 914 F.2d 1409, 1410 (10th Cir.1990); cf. Oviawe v. Immigration and Naturalization Service, 853 F.2d 1428 (7th Cir.1988); Delgado–Chavez v. Immigration and Naturalization Service, 765 F.2d 868 (9th Cir.1985); Jew Ten v. Immigration and Naturalization Service, 307 F.2d 832 (9th Cir.1962), the Court views the reference to subsection (a)(11) in subsection (b) as simply evincing Congress' displeasure with earlier expansive judicial decisions which recommended against deportation for defendants in drug-related cases. In other words, the Court believes that the reference to subsection (a)(11) in subsection (b) is nothing more than Congress' way of underscoring that under no circumstances shall any outburst of judicial activism entitle a court to recommend against deportation in a case involving a defendant who committed a drug-related crime. See Quintana, 914 F.2d at 1410. No. 89–2132, slip op. at 4.

■ In the present case, Jamal Issa Ali has pled guilty to a one-count information charging him and his brother with conspiracy to purchase an unregistered machine gun, from which the identifying serial num-ber had been removed, and a silencer for the machine gun. Hence, the Court believes, on the basis of common sense and the representations that have been made by the United States in open court, that if deportation proceedings are initiated against him, the proceedings will be premised upon subsection (a)(14) (dealing with firearms violations). See generally Cabasug v. Immigration and Naturalization Service, 837 F.2d 880 (9th Cir.1988); Zinnanti v. Immigration and Naturalization Service, 651 F.2d 420 (5th Cir.1981); Gutierrez–Rubio v. Immigration and Naturalization Service, 453 F.2d 1243 (5th Cir. 1972). As indicated above, a judicial recommendation against deportation can only be issued by a trial court when the deportation proceedings are commenced pursuant to subsection (a)(4) (dealing with crimes of moral turpitude and aggravated felonies), and the trial court has no power under the statute to enter such a recommendation when the deportation proceedings are initiated pursuant to subsection (a)(14) (dealing with firearms violations). Accordingly, based upon the clear language of subsection (b), the Court does not believe that it has the authority to recommend to the Attorney General that Jamal Issa Ali should not be deported based upon his guilty plea to the firearms charge.

■ Counsel for defendant Jamal Issa Ali has suggested, however, that, although his client's crime cannot be properly characterized as a crime of moral turpitude, it does fall within the category of aggravated felonies as that term is defined in the United States Code. According to counsel for defendant Jamal Issa Ali, section 1101(a)(43) of Title 8 of the United States Code provides, in pertinent part, that:

> The term "aggravated felony" means murder, any drug-trafficking crime as defined in section 924(c)(2) of Title 18, or any illicit trafficking in any firearms or destructive devices as defined in section

---

4. Ironically, three days after Jamal Issa Ali's motion was filed with the Court, the Tenth Circuit Court of Appeals decided the only case exactly on point with the present case. See United States v. Quintana, 914 F.2d 1409 (10th Cir.1990). In the Quintana case, the Tenth Circuit also concluded that a judicial recommendation against deportation is only proper when the crime involved is either a crime of moral turpitude or an aggravated felony.

921 of such title, or any attempt or conspiracy to commit any such act, committed within the United States.

8 U.S.C. § 1101(a)(43) (1990). Section 921(a)(3) of Title 18 of the United States Code defines the term "firearm" as:

(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3) (1976). Based upon these provisions, counsel for defendant Jamal Issa Ali argues that the Immigration and Naturalization Service, if it so desired, could premise any future deportation proceedings regarding his client on subsection (a)(4) (dealing with crimes of moral turpitude and aggravated felonies), instead of subsection (a)(14) (dealing with firearms violations). In that event, counsel for defendant Jamal Issa Ali maintains that the Court would have the power to enter a judicial recommendation against deportation and should now do so for a variety of reasons.

Assuming *arguendo*, (1) that counsel for defendant Jamal Issa Ali is correct, (2) that, contrary to the Court's view, future deportation proceedings against defendant Jamal Issa Ali will be conducted pursuant to subsection (a)(4) (dealing with crimes of moral turpitude and aggravated felonies), not pursuant to subsection (a)(14) (dealing with firearms violations), and (3) that the Court does have the power to enter a judicial recommendation against deportation in that instance, this Court still feels that a judicial recommendation against deporta-

tion is not warranted by the facts of the present case. It is true that Jamal Issa Ali is young,[5] that he has no prior criminal record, and that deportation is a very serious sanction, but the fact remains that Jamal Issa Ali pled guilty to attempting to purchase, with $1000.00 in cash, an unregistered machine gun, from which the identifying serial number had been removed, and a silencer for the machine gun. This is a very serious offense, and when the severity of the offense is coupled with the absence of any extenuating circumstances or other extraordinary factors to counsel otherwise,[6] the Court does not feel that the present case provides an appropriate vehicle for exercising any authority that this Court may have to bind the Attorney General from commencing deportation proceedings against Jamal Issa Ali based upon the crime to which he has pled guilty in this Court.

Additionally, the Court respects the fact that the Attorney General is the party expressly charged by Congress to handle matters dealing with immigration and deportation and has, as a result, gained expertise in such matters. *See United States v. Strelchuk*, 683 F.Supp. 487 (M.D.Pa. 1988). Since the instant case presents no exceptional reasons for not deferring to the Attorney General, the Court does not deem it appropriate to intervene in the Attorney General's use of his expertise and experience in deportation matters, but rather leaves to the Attorney General the use of that expertise and experience in the present case to determine whether or not the deportation of Jamal Issa Ali is proper. *See Quintana*, 914 F.2d at 1409–10. No. 89–2132, slip op. at 2. Accordingly, even if the Court has the authority to do so, the Court is unwilling to render ineffectual the

---

**5.** Jamal Issa Ali is young, but he is not *that* young. He is 26 years of age. Clearly, he is old enough by all standards to be held fully accountable for his actions.

**6.** Courts principally utilize their authority to recommend against deportation pursuant to subsection (b) in cases that are particularly sympathetic. In *United States v. DeParias*, 631 F.Supp. 1530 (S.D.N.Y.1986), for example, the district court filed a recommendation against deportation with the Attorney General for a

woman who had been twice convicted of felonies involving moral turpitude. In that case, the district court was particularly moved by the fact that the woman had a number of small children who, as innocents, would have been severely affected by the deportation of their mother. *See also Pacheco v. Immigration and Naturalization Service*, 546 F.2d 448 (1st Cir. 1976). By contrast, the Court does not find any such extraordinary circumstances in the present case.

discretion of the Attorney General by entering a binding recommendation against deportation.

In closing, the Court would remind defendant Jamal Issa Ali that, while imposing a sentence upon him that was prescribed by the Sentencing Guidelines, the Court, when it has had the discretionary authority to do so, has been lenient and generous with him. The Court believes that if defendant Jamal Issa Ali presents himself well before the Immigration and Naturalization Service and creates a favorable impression with the decision-makers in that agency, then the Immigration and Naturalization Service may likewise treat him with leniency and mercy. The Court is, nevertheless, unwilling to deny the decision-makers in the Immigration and Naturalization Service the opportunity to review defendant Jamal Issa Ali's case independently and to come to whatever conclusion they deem appropriate.

### Conclusion

For the above-stated reasons, Jamal Issa Ali's motion for a judicial recommendation against deportation and exclusion must be denied.

An appropriate Order shall this day issue.