**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David LANZOTTI and Connie L. Hughes, Defendants– Appellants.**

**Nos. 98–2728, 98–2750.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1999

Decided Feb. 15, 2000

Patrick J. Chesley (argued), Office of the United States Attorney, Springfield, IL, for plaintiff-appellee.

Allen E. Shoenberger (argued), Loyola University School of Law, Chicago, IL, for defendant-appellant David Lanzotti.

Michael J. Costello (argued), Springfield, IL, for defendant-appellant Connie L. Hughes.

Before BAUER, COFFEY, and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

David Lanzotti ("Lanzotti") and Connie L. Hughes ("Hughes") were found guilty of participating in an illegal gambling business in violation of 18 U.S.C. § 1955. Lanzotti was also convicted of conspiracy, 18 U.S.C. § 371, in the first trial of this case. *United States v. Lanzotti*, 90 F.3d 1217 (7th Cir.1996). Both now appeal their convictions and sentences.

I. Background

For approximately 10 years, Lanzotti and Howard Furkin ("Furkin"), under the guise of a legitimate business called Allstar Music, Inc. ("Allstar"), operated a large scale gambling business. Allstar, owned by Furkin, leased amusement machines to bars and service clubs. Lanzotti originally persuaded Furkin to enter into the gambling business in which Furkin, using fictitious names, purchased video and poker machines with cash. These cash purchases were not reported to either the Internal Revenue Service or to Allstar's own accountants. The machines were then converted into gambling devices and placed in various bars and taverns in which they had already established a connection. The bars would pay the winning patrons and then split the profits with Allstar.

By 1992 Allstar had close to 250 gambling machines in approximately seventy-five locations with an average weekly income that varied between several hundred dollars to as much as three thousand dollars per bar. Lanzotti and Hughes were responsible for servicing the machines and collecting the profits. Hughes only worked as an employee of Allstar for approximately two years but continued to work as Lanzotti's assistant in the gambling business. They were the primary contacts between the bar owners and Allstar. Lanzotti also owned one of the bars and on at least one occasion dealt directly with a gambling customer's payoff dispute.

Neither Lanzotti nor Furkin reported the income they received from the gambling machines to the Internal Revenue Service. In fact, they encouraged bar owners to lie about how much money they had received from the gambling machines. To protect themselves from the IRS, Lanzotti and Furkin entered into backdated lease agreements with the bar owners to purposefully misrepresent the income received from the machines. In these fictitious lease agreements, bar owners paid a flat rate, which was less than half the gross earnings, for the machines each week.

On January 18, 1995, a jury convicted Lanzotti and Hughes and other defendants for violating 18 U.S.C. § 1955. Lanzotti was also convicted of conspiracy. On June 8, 1995, the district court granted a new trial with respect to the gambling charge for Lanzotti and Hughes because the jury instructions inadequately described the aiding and abetting theory to the jury. Lanzotti and Hughes moved to prevent the retrial based on double jeopardy grounds. The district court denied their motion and this Court of Appeals affirmed that decision. *United States v. Lanzotti*, 90 F.3d 1217 (7th Cir.1996).

Lanzotti and Hughes were retried on the gambling charge and on February 11, 1998, were again found guilty. A joint sentencing hearing was held for both defendants on June 29, 1998. Lanzotti, with a two-level enhancement for obstruction of justice, was sentenced to 120 months incarceration followed by three years of supervised release, and ordered to pay $500,-000 in restitution to the Internal Revenue Service. Hughes, with a three-level enhancement for her supervisory role in the business, was sentenced to twenty months incarceration followed by three years of supervised release. She has served her time and has been released from custody.

Lanzotti and Hughes appeal their convictions and sentences.

## II. Lanzotti's and Hughes' Conviction

### A. Aiding and Abetting Instruction

■ The defendants appeal their convictions on the grounds that aiding and abetting a state gambling law violation fails to satisfy the federal gambling statute's (18 U.S.C. § 1955) requirement that the gambling business violate state law.

■ We review the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the Government, and we will affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Jackson*, 103 F.3d 561, 567 (7th Cir.1996). Only when the record contains no evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt will a jury verdict be overturned. *United States v. Furkin*, 119 F.3d 1276, 1280 (7th Cir.1997).

Section 1955 makes it a crime for whoever conducts, finances, manages, directs, or owns all or part of an illegal gambling business. 18 U.S.C. § 1955(a). In order to establish a violation under 18 U.S.C. § 1955, the government must prove the existence of an illegal gambling business. One requirement is for the government to establish that the business violated a law of the state in which it was conducted. 18 U.S.C. § 1955(b)(1)(i). The indictment in this case charged the defendants with violating Illinois law 720 ILCS 5/28–1. Subsection (a)(1) of this provision provides that a person commits the offense of gambling when he "[p]lays a game of chance or skill for money or other thing of value." 720 ILCS 5/28–1(a)(1). Subsection (a)(3) provides that a person commits the offense of gambling when he "[o]perates, keeps, owns, uses, purchases, exhibits, rents, sells, bargains for the sale or lease of, manufactures or distributes any gambling device." 720 ILCS 5/28–1(a)(3).

Lanzotti argued that the use of the aiding and abetting theory in connection with a state law violation created a new offense. This court, in affirming the district court, disagreed and stated that the indictment and the prosecution's factual theory of the case described a violation of state law under the aiding and abetting and (a)(3) theories but was insufficient under (a)(1). *United States v. Lanzotti*, 90 F.3d 1217, 1224 (7th Cir.1996). Although the jury was given the aiding and abetting instruction, the district court granted a new trial because it was not "fully and fairly communicated by the jury instructions." *Id.*

■ In the new trial, the government established that by providing the bars with the machines to be played, Lanzotti and Hughes aided and abetted the patrons playing games of chance for money. The jury was then instructed with Illinois Pattern Jury Instruction 5.03 which states:

> A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of an offense.

The instruction was not objected to by the defendants, therefore it is reviewed under a plain error standard. *United States v. Brothers*, 955 F.2d 493, 496 (7th Cir.1992).

■ Under federal law, the crime of aiding and abetting requires knowledge of the illegal activity that is being aided and abetted, a desire to help the activity succeed and some act of helping. *United States v. Garcia*, 45 F.3d 196, 199 (7th Cir.1995). The jury was instructed with this court's pattern Instruction 5.08 which states:

> Any person who knowingly aids, abets, counsels, induces or procures the commission of a crime is guilty of that crime. However, that person must knowingly associate himself with the criminal venture, participate in it, and try to make it succeed.

In evaluating the merit of challenged jury instructions to which objections were properly raised in the proceedings below, we review the charge in its entirety and ascertain whether the jury was misled in any way and whether it had an understanding of the issues and its duty to determine those issues. *United States v. Boykins*, 9 F.3d 1278, 1285 (7th Cir.1993); *United States v. Loscalzo*, 18 F.3d 374, 383 (7th Cir.1994). If the instructions are adequately supported by the record and are fair and accurate summaries of the law, the instructions will not be disturbed on appeal. *Id.* In this case, the instructions clearly informed the jury correctly about aiding and abetting and no error occurred.

### B. Expert Witness

■ Lanzotti and Hughes further argue that the district court abused its discretion in refusing to allow their expert witness, James Jordan, to testify. Rule 702 establishes two admissibility requirements for expert testimony: (1) the expert must be qualified, and (2) the subject matter of the expert's testimony must consist of specialized knowledge that will be helpful or essential to the trier of fact in deciding the case. *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir.1994); *United States v. Stevenson*, 6 F.3d 1262, 1266 (7th Cir.1993); Fed.R.Evid. 702. A court has wide discretion in determining the competency of a witness as an expert and the relevancy of his testimony with respect to a particular subject. The district court's decision will be overturned on appeal only if manifestly erroneous. *Stevenson*, at 1267.

In this case, the district court denied the defendants' motion to establish Jordan as an expert. The defendants did not provide the court with any information regarding Jordan's resume, curriculum vitae, or credentials that would qualify him as an expert in the area of gambling. In fact, Jordan works for the Illinois Liquor Control Commission which regulates liquor, not gambling, and is not qualified to render an expert opinion on whether or not Cherry Master and Poker machines are illegal. The district court did not abuse its discretion in denying defendants' motion to supplement their witness list.

### III. Lanzotti's Sentence and Restitution

### A. Sentence

■ Lanzotti appeals the two-level enhancement of his sentence for obstruction of justice. He contends that the court double counted when it used the same conduct to establish his conspiracy offense to justify the enhancement for obstruction of justice.

■ We give great deference to a sentencing court's determination that a § 3C1.1 enhancement is appropriate. *United States v. Hickok*, 77 F.3d 992, 1007 (7th Cir.1996). Indeed, we will overturn a factual finding in the sentencing context only if our review of the record leaves us with "a definite and firm conviction that a mistake has been committed." *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).

> Section 3C1.1 provides that:
> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and the obstructive conduct related to the defendant's of-

fense of conviction and any relevant conduct; or a closely related offense, increase the offense level by 2 levels.

USSG § 3C1.1

Application Note 7 to § 3C1.1 provides that an adjustment may be made if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself.

Lanzotti's contention that the court double counted is not supported by the record. In fact, this court has previously held that, while some overlap will occur concerning the evidence of obstruction as it relates to the various enhancements and the departure, each represent different considerations under the Guidelines. *Furkin*, 119 F.3d 1276, 1284. In other words, the different guidelines address different concerns relating to a defendant's obstructive conduct. *Id*. Additionally, both the application notes to sec. 3C1.1 and this Court's case law make it clear that improperly attempting to influence a witness (including by counseling a potential witness to make false statements to investigating authorities) indeed qualifies as obstruction of justice under U.S.S.G. § 3C1.1. *United States v. Friend*, 104 F.3d 127, 131 (7th Cir.1997).

■■■ In this case, the court found that the defendant created false documents to conceal the true nature of his gambling operations, including backdating leases, and his conduct was extensive and pervasive. The court further found that when Lanzotti became aware of the IRS investigation, he tried to influence witness testimony. He encouraged the various bar owners, including David Hampsten, to lie about their payment arrangement with Allstar. To reduce his expenses, Lanzotti wanted them to say they paid a flat rate for the machines instead of splitting the profits. Regardless of the payment arrangement, the income was never turned into Allstar or recorded, unlike the income from their non-gambling machines. These findings are clearly consistent with Application Note 7's discussion of obstruction.

Lanzotti's two-level enhancement was warranted.

**B. Restitution**

■■■ Lanzotti argues that there was inadequate justification for the sentencing court to order restitution without citing any legal authority in support of his contention. We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues). *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991); See, e.g., *United States v. Brown*, 899 F.2d 677, 679 n. 1 (7th Cir.1990); *United States v. Petitjean*, 883 F.2d 1341, 1349 (7th Cir. 1989); *United States v. Williams*, 877 F.2d 516, 518-19 (7th Cir.1989); Fed.R.App.P. 28(a)(4). A party urging us to reverse a district court's judgment has an obligation to argue why we should reverse that judgment, and to cite appropriate authority to support that argument. See *Brown*, 899 F.2d at 679 n. 1; see also *Beard v. Whitley County REMC*, 840 F.2d 405, 408-09 (7th Cir.1988). "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983) (Scalia, J.). It is not this court's responsibility to research and construct the parties' arguments. *Williams*, 877 F.2d at 518; *Beard*, 840 F.2d at 408-09.

■■■ Lanzotti does not provide this court with any evidence that the sentencing court abused its discretion in ordering restitution. *Berkowitz*, 927 F.2d 1376, 1384. The Guidelines contemplate full restitution whenever possible and the defendant must establish that full restitution is unwarranted under the circumstances to reduce or alleviate that obligation. *United States v. Brown*, 47 F.3d 198, 206 (7th Cir.1995); 18 U.S.C. § 3663(a)(2) (Victim and Witness Protection Act of 1982

(VWPA)). In other words, the burden is on the defendant to show why restitution is unwarranted. The lack of documentation that Lanzotti benefitted from the unreported income is beside the point. Lanzotti, as a member of the conspiracy, is liable for the actions of his coconspirator, which includes restitution where appropriate. *United States v. Brewer,* 983 F.2d 181, 185 (10th Cir.1993); *United States v. Chaney,* 964 F.2d 437, 452–53 (5th Cir. 1992).

## IV. Hughes' Sentence

 Hughes argues that the district court erred in imposing a three-level enhancement in connection with her gambling conviction. The court found that Hughes acted as a manager or supervisor as defined under U.S.S.G. § 3B1.1(b) of the sentencing guidelines. This finding lacks a factual predicate and constitutes clear error. The fact that Hughes was Lanzotti's girlfriend and a participant in the collection does not render her a manager or a supervisor. She was not an employee of All-Star, she never received a paycheck, and only went to the office occasionally on her own. Hughes' sentence is vacated and remanded to the district court for the limited purpose of re-sentencing Hughes without the three-level enhancement for being a manager or supervisor.

All other points and arguments either have been waived or are without merit.

## V. Conclusion

For the foregoing reasons Lanzotti's conviction and sentence and Hughes' conviction are affirmed. Hughes' sentence is vacated and remanded for re-sentencing.