**Loretta Klutz OWENS, Individually and as Personal Representative of the Estate of James A. Klutz, Plaintiffs,**

v.

**AMTROL, INC., Defendant.**

**No. 3:98–CV–0545RM.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 21, 2000.

---

Elden E Stoops, Jr, North Manchester, IN, Fred E Stoops, Sr, Stoops and Clancy, Tulsa, OK, for Loretta Klutz Owens.

Edward L Murphy, Jr, Miller Carson Boxberger and Murphy, Fort Wayne, IN, for Amtrol Inc.

Matthew A Yeakey, Daniels Sanders Pianowski, Hamilton and Todd, Elkhart, IN, for Walmer Supply Inc.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This case is before the court on defendant Amtrol's motion to exclude expert testimony of Allan D. Abramow and Amtrol's motion for summary judgment. Mr. Abramow's testimony is essential to the opposition to the summary judgment motion, so the court first addresses the admissibility of Abramow's expert testimony.

James Klutz worked for Klutz Well Drilling as an installer and repairman. In 1990, Mr. Klutz installed an Amtrol Well-X-Trol Model WX–251 water pressure tank at Liberty Veal Farm. On November 4, 1996, Mr. Klutz and Gary Yentes, a coworker at Klutz Well Drilling, responded to a complaint of low water pressure in the tank at the Liberty Veal Farm. In the morning of that day, the two men inspected the tank. By tapping the tank, Mr. Yentes determined that the tank either had low air pressure or needed to be replaced. After an hour or so on the scene, Mr. Klutz and Mr. Yentes left the Liberty Veal Farm for another project. Later that afternoon, Mr. Klutz returned to the Liberty Veal Farm alone to work on the tank. The tank ruptured and exploded, resulting in Mr. Klutz's death.

Loretta Klutz Owens, Mr. Klutz's widow, brings this suit against Amtrol, both in her individual capacity and as the personal representative of Mr. Klutz's estate. The court's jurisdiction is based on the parties' diverse citizenship, and Indiana law provides the rule of decision. Ms. Owens brings claims of strict liability under the Indiana Products Liability Act, breach of an implied warranty, and loss of consortium. Mrs. Owens hired Mr. Abramow to investigate and testify to the possible defects in the tank's design and manufacture. Mr. Abramow concluded that a circumferential weld around the tank caused it to "launch" like a rocket and that the use of further rust protection may have avoided the explosion.

Federal Rule of Evidence 702 governs expert testimony: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." "Knowledge", under this rule, must be more than a subjective belief or unsupported speculation. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *United States v. Lanzotti*, 205 F.3d 951, 956–957 (7th Cir.2000).

The trial court acts as a "gatekeeper" to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. at 589, 113 S.Ct. 2786.

■■■■ Amtrol first challenges Mr. Abramow's qualifications. A witness must qualify under Rule 702 to present expert testimony. *United States v. Lanzotti,* 205 F.3d 951, 956–957 (7th Cir.2000). Amtrol claims that Mr. Abramow has no experience in the design or manufacture of water pressure tanks, has never been involved in the manufacture of a tank similar to the one at issue in this case, and has never designed a pressure tank of any kind. This argument doesn't persuade the court. Mr. Abramow said in his deposition that he was involved in the design and construction of many pressure vessels when he worked at Dollinger Filter Corporation in the 1960's. He could not recall if any were specifically water vessels, but Amtrol offers nothing to indicate that experience with other pressure vessels is so different from water vessels as to render the experience meaningless. Mr. Abramow has a Bachelor of Science degree in mechanical engineering, worked as an instructor in a university engineering department, and from 1961 has been employed in the field of applied engineering. Amtrol has presented nothing to suggest that the field has undergone dramatic recent change that would render Mr. Abramow's knowledge and experience too stale. This court can simply not agree that Abramow lacks training, education, or experience that renders him capable of testifying simply because he has never worked on the specific type of water pressure tank at issue. Under the circumstances of this case, those issues affect the weight of his testimony rather than its admissibility. *See United States v. Gilliard,* 133 F.3d 809, 816 (11th Cir.1998).

■■■■ Reliability, though, is a different matter. This inquiry focuses, not on the witness's qualifications as an expert in the field, but rather on the methodology the expert used to reach the proffered opinion. *Clark v. Takata Corp.,* 192 F.3d 750, 756 (7th Cir.1999). An expert must substantiate his or her opinion, and not simply provide an ultimate conclusion with no analysis. *Id.* at 758. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *General Electric Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Hands-on testing and review of experimental, statistical, or other scientific data gathered by others are examples of reasonable methodologies upon which opinion may reliably rest. *Clark v. Takata Corp.,* 192 F.3d at 758 (citing *Cummins v. Lyle Indus.,* 93 F.3d 362, 369 (7th Cir. 1996)). The inquiry is "a flexible one" designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Patrick Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■■■■ Among the factors that guide determination of "whether testimony is scientifically valid: (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subject to peer review and publication; (3) whether the theory or technique has a known or potential rate of error; and (4) whether the theory or technique is generally accepted." *United States v. Vitek Supply Corp.,* 144 F.3d 476, 484–85 (7th Cir.1998), *cert. denied,* 525 U.S. 1138, 119 S.Ct. 1026, 143 L.Ed.2d 37 (1999). "[U]nscientific speculation offered by a genuine scientist" must be excluded. *See Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316, 318 (7th Cir.1996).

Amtrol points out that Mr. Abramow never reviewed the design specifications, plans, or any other product literature with respect to the tank before concluding that

the alleged improper design and manufacture led to the explosion. He didn't view the accident scene until after rendering an opinion. Mrs. Owens notes that the questions Mr. Abramow is asked to answer are whether the rust could have been prevented, and whether there was a safer design so that even if the tank rusted through, it would not have exploded as it did.

Mr. Abramow's methodology consisted of viewing the tank after the explosion and comparing it to similar tanks and to alternatively designed tanks. Similar tanks with different weldings did not show the same corrosion around the base that the Amtrol tank showed, and other Amtrol tanks showed rusting in the same location. Amtrol says this is not science but rather mere speculation, unsupported by any literature, scientific studies, or even Mr. Abramow's own experience.

Mr. Abramow simply sets forth his observations and his opinions, with no explanation of how or why the former lead to the latter. His August 4, 1999 report details his observations of the Amtrol tank and the rust he found on the tank, then immediately opines that the tank failed "because rust had reduced the wall thickness to practically nothing completely around the circumference of the tank" because of the rust—which he says resulted from defective manufacture—and method by which the tank was attached to the base cylinder. Mr. Abramow says inadequate or non-existent corrosion protection on the failed weld area most likely caused the rust, an opinion he reaches through something resembling a differential diagnosis: "Since other welded seams appear to have been treated with relatively effective corrosion protection, it seems apparent by the severity of rust that the failed weld had not been afforded the same protection, or had been manufactured differently." Mr. Abramow went on to explain that there are ways to protect steel from rusting, and that Amtrol uses some such methods on other tanks.

■ Reliable engineering principles may exist that support this reasoning, but they are not evident from this record. To the court's untrained eye, the reasoning seems to run as follows: (1) there was severe rust around the weld, (2) other welded areas were not rusted so severely, (3) the less rusted areas had effective corrosion protection, so (4) the severely rusted area must not have had the same effective corrosion protection (since there was severe rust), although (5) there are plenty of reasonable ways to protect against corrosion, so (6) the failure to use any of them constituted defective manufacture. The court does not intend to demean the opinion of Mr. Abramow, who (as discussed above) is an unquestioned expert—but even the unquestioned expert must point to the principles or teachings of the field that lead from the known to the opinion. Mr. Abramow's conceded expertise cannot save the opinion. *See Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir.1998) ("It is true that Dr. Nelson has impressive credentials. . . . But the fact is that he did no testing on these products, either alone or in combination. Neither did he provide studies which employed such testing. In short, Dr. Nelson offered only speculation. And we have sanctioned the exclusion of speculation offered by persons with credentials as impressive as those of Dr. Nelson."). Too, Mr. Abramow might be right, but a gatekeeping court must evaluate the reliability of the bridge the expert takes to the opinion, not the opinion itself. *Cooper v. Carl A. Nelson & Co.*, —— F.3d ——, ——, 2000 WL 257140, at *12, Nos. 98–4169, slip op. at 20 (7th Cir. Mar. 7, 2000) ("Certainly, when the asserted cause of the patient's condition is a phenomenon that requires specialized scientific knowledge, 'an insightful, even an inspired, hunch' will not suffice.").

■ Mr. Abramow's deposition does not fill in the gaps. Nothing in the summary judgment record discloses underlying principles or methodology that Mr. Abramow can be said to have used to reach his opinions. The record's silence leaves the court unable to find support for

admissibility in any of the *Daubert* factors: there is nothing to indicate that his technique for determining that the tank was improperly manufactured and designed has or could be tested, that it has been subject to peer review or publication, that it has any known or potential error rate, or that it is generally accepted in his field. As the proponent of Mr. Abramow's expert opinion, Mrs. Owens had the burden to demonstrate its reliability, *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1141 (9th Cir.1997), and she cannot be said to have done so. Amtrol's motion to exclude the opinion must be granted.

Mrs. Owens concedes, in her response to the motion to exclude, that proof of her case requires expert testimony. She concedes in her summary judgment response that her breach of implied warranty claim is duplicitous of the strict liability action and cannot be pursued in the same lawsuit. She also concedes that her loss of consortium claim ended upon Mr. Klutz's death, which was instantaneous. Without Mr. Abramow's opinion, no reasonable jury could find that the Amtrol tank was in a defective condition within the meaning of IND. CODE § 34–20–4–1. The many remaining factual issues are not material, and Amtrol is entitled to judgment as a matter of law.

The result in this case may seem harsh, but modern evidence law demands that scientists demonstrate, in testimony, that the methods used to produce an opinion satisfy the standards for scientific methodology that his profession would require of his out-of-court research. *People Who Care v. Rockford Bd. of Education,* 111 F.3d 528, 534, 537(7th Cir.1997). The record simply does not allow a finding that such methodology was used here. For the foregoing reasons, the court GRANTS the defendant's motion to exclude expert testimony of Allan D. Abramow [Docket No. 27]; GRANTS Amtrol's motion for summary judgment [Docket No. 39]; DENIES AS MOOT Amtrol's motion for continuance of trial [Docket No. 46]; and VACATES the May 8 final pretrial confer-

ence and the May 15 trial date and any other scheduling deadlines.

SO ORDERED.