UNITED STATES of America, Plaintiff–Appellee,

v.

John CHRISTOPHER, a/k/a John DiVito, Defendant–Appellant.

No. 00–1797.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 2000.

Decided Jan. 17, 2001.

---

Before MANION, KANNE, DIANE P. WOOD, Circuit Judges.

## ORDER

John Christopher pleaded guilty to making a false oath in a bankruptcy proceeding, and to failing to collect and pay taxes and file tax returns. Pursuant to his plea agreement, Christopher assisted the government in a series of corruption prosecutions. At his sentencing, the government moved for a downward departure of Christopher's sentence because of his substantial assistance. The district court denied the government's motion, finding that Christopher had already received the benefit of his bargain with the government because he was not charged with several other crimes that he had committed. Christopher appeals, arguing that the district court relied on inaccurate information and thus imposed his sentence in violation of his due process rights. We conclude that Christopher has failed to demonstrate that he was sentenced on the basis of inaccurate information, and thus we affirm his conviction and sentence.

## I.

In December 1995, the government charged John Christopher in a three-count Information with making a false oath in violation of 18 U.S.C. § 152, failing to collect and pay taxes in violation of 26 U.S.C. §§ 7512 and 7215, and with failing to file a 1994 income tax return in violation of 26 U.S.C. § 7203. On January 3, 1996, Christopher entered into a plea agreement in which he pleaded guilty to all three counts of the Information. On Count One, Christopher admitted that he knowingly and fraudulently made a materially false oath in relation to a Title 11 bankruptcy case involving his excavation company, Marlboro, Incorporated, in violation of 18 U.S.C. § 152. Specifically, he stated that an individual named "John DiVito" was a friend and consultant to the company when, in fact, Christopher used that name as an alias so that he could receive and cash company checks made out to that name. Christopher also admitted that he made his female secretary the nominal president of Marlboro so that the company would be given preferential treatment by municipalities and contractors for excavation jobs. On Count Two, Christopher admitted that as the chief controlling officer of Marlboro and another company named Crush–All, Incorporated, he failed to collect, account for, and pay federal taxes withheld from wages. Additionally, Christopher failed to comply with IRS notices requiring him to collect and deposit the taxes in a separate bank account in trust for the United States, in violation of 26 U.S.C. §§ 7512 and 7215. Christopher also admitted that he failed to pay federal unemployment taxes for both businesses. And with respect to Count Three, Christopher admitted that he failed to file an income tax return for 1994, in violation of 26 U.S.C. § 7203, and that he failed to file federal income tax returns for 1992 and 1993.

Pursuant to the plea agreement, Christopher agreed to cooperate fully and truthfully with the government in a series of corruption prosecutions known as Operation Silver Shovel. Specifically, Christopher agreed to act as a cooperating witness for the FBI and to participate in recorded conversations with targets of federal investigations. In return, the government agreed not to charge Christopher for two crimes, bank fraud and bribery, that he admitted to committing before he began cooperating with the government in 1992. The plea agreement also provided that at the time of sentencing, the government would move, pursuant to U.S.S.G. § 5K1.1, for a downward departure in Christopher's sentence because of his substantial assistance. Christopher also acknowledged that the district court was not bound by the plea agreement, and that the court may still sentence Christopher to the maximum penalties allowed under the Guidelines.

According to the Sentencing Guidelines, Christopher's combined offense level was 16, but his plea agreement stated that he would be entitled to a two-level reduction for accepting responsibility for his criminal conduct, and a one-level reduction for timely notifying the government of his intention to plead guilty, for a total offense level of 13. Christopher's criminal history category was calculated to be at VI because of his past convictions of possession of an unregistered handgun and silencer, conspiracy to embezzle bank funds, conspiracy to obtain payment of a false claim against the United States, and making a false statement. Thus his total potential sentence (without the benefit of the plea agreement) was seven years imprisonment, a $450,000 fine (or a fine of twice the gross gain or loss caused by the offenses), three years of supervised release, prosecution costs and restitution.

At Christopher's sentencing, the government made its § 5K1.1 motion, arguing that Christopher provided substantial assistance to the government by participating in undercover operations, and enabling the FBI to make over 1,100 audio or video recordings in a series of investigations in which the government charged nineteen defendants in Operation Silver Shovel.

The district judge then stated that "in terms of having a balanced view," she would read portions of Christopher's testimony when he was cross-examined in the *United States v. Jones* trial, another Operation Silver Shovel trial over which the judge presided. The court read Christopher's testimony in which he admitted to committing several crimes before and after he began cooperating with the government in 1992. Christopher admitted that before he began cooperating with the government, he had defrauded Cosmopolitan Bank out of $2.5 million, ran his business by defrauding banks out of money, and bribed Alderman Bill Henry in connection with an illegal dump site. Christopher also admitted to committing several crimes after he started cooperating with the government, and after having signed a formal agreement with the FBI promising that he would not commit any more crimes. Specifically, Christopher admitted that he engaged in unauthorized dumping; entered into unlawful and unauthorized transactions with currency exchanges; lied to the FBI in order to protect a person; paid a union representative to avoid providing benefits to union workers; failed to pay taxes or file tax returns even though he received an income for his cooperation with the government since 1992; failed to pay taxes that he withheld from his employees' salaries; caused his secretary to file a false bankruptcy petition for Marlboro and lied to the bankruptcy trustee about his relationship to the company and the identity of "John DiVito"; knowingly laundered $200,000 for the mob; and lied to the FBI about the source of the mob cash.

When the district court concluded this reading of Christopher's testimony into the record, she stated: "As I understand it, out of all those criminal activities that you have told us about and that you told the FBI about, the only things you were charged with were one felony and two misdemeanors." The judge also confirmed that Christopher had paid back only a couple of the several banks that he defrauded through the years, and that he had made no significant payments on the income and withholding taxes that he owes. The court also concluded: "So given your past record, it's pretty unlikely that anybody is ever going to see any money from you or very much money from you on any taxes or judgments."

The district court then denied the downward departure motion, concluding that:

It seems to me that you have gotten the benefit of your cooperation, a much greater benefit than I have seen other cooperating defendants get, when you weren't charged with many crimes that have been committed by you. Furthermore, you would not have been charged at all for very serious felonies if you had not committed crimes while you were cooperating with the Government. What you got for your cooperation and help to the Government was, despite the fact that you had committed numerous crimes during the time that you were helping the Government, was a plea agreement that charged you only with one felony, a fairly minor one, and two misdemeanors. The only reason that your guideline sentence would be lengthy at all is because of your criminal history which puts you in a category VI.

Let's look at what you have not been charged with. You have not been charged with bribing union officials, you were not charged at all in connection with a huge fraud on Cosmopolitan Bank, you haven't paid any taxes on all the money that you have received from the Government since 1992. In January 1999 you testified that that was over $650,000. You have not filed an income tax return for I don't know how many years at this point. You engaged in money laundering of hundreds of thousands of dollars, you stole hundreds of thousands of dollars that was owed to the Government in payroll taxes when you failed to pay those taxes.

So you have not been charged with a lot of crimes that could have put you in the custody of the Bureau of Prisons for many years, as you admitted during your cross-examination in the Jones case. So I think you have gotten the benefit of your bargain.

The judge then determined that Christopher's Guideline range was 33 to 41 months, and sentenced him to 39 months on Count One, 12 months on Count Two, and 12 months on Count Three (with all terms to run concurrently), as well as three years of supervised release and a $25,000 fine. Christopher appeals.

## II.

Christopher argues on appeal that the district court imposed his sentence on the basis of inaccurate information, in violation of his due process rights. In support of his contention, Christopher claims that when the district court denied the government's § 5K1.1 motion, the court erroneously believed that Christopher was not charged with certain crimes that were in fact already charged in the Information. He also asserts that the district court wrongly believed that he received a benefit

when he was not charged with certain crimes that the record indicates were not prosecutable, and thus the government could not have charged him with those crimes anyway.

■ "We lack jurisdiction to review a district court's refusal to depart downward where that refusal resulted from a proper exercise of the district judge's discretion." *United States v. Milquette*, 214 F.3d 859, 865 (7th Cir.2000). But we have jurisdiction to review the court's refusal to depart downward if the sentence was imposed in violation of the law or as a result of an incorrect application of the sentencing guidelines. *United States v. Winters*, 117 F.3d 346, 348 (7th Cir.1997); 18 U.S.C. §§ 3742(a)(1) and 3742(a)(2). In this case, Christopher's due process claim is that the district court imposed his sentence in violation of the law, that is, in violation of Christopher's constitutional right to be sentenced according to accurate information. We have recognized that a defendant has a due process right to be sentenced on the basis of accurate information, and that the defendant "cannot succeed with such a claim unless he demonstrates that the information before the court was inaccurate and that the court relied on it." *United States v. Senn*, 102 F.3d 327, 332 (7th Cir.1996); *United States v. Franz*, 886 F.2d 973, 980 (7th Cir.1989). Accordingly, we will review each of Christopher's claims that the district court sentenced him on the basis of inaccurate facts.

■ In support of his due process argument, Christopher focuses entirely on the following paragraph in the transcript of the district court's comments at the sentencing hearing:

Let's look at what you have not been charged with. You have not been charged with bribing union officials, you

were not charged at all in connection with a huge fraud on Cosmopolitan Bank, you haven't paid any taxes on all the money that you have received from the Government since 1992. In January 1999 you testified that that was over $650,000. You have not filed an income tax return for I don't know how many years at this point. You engaged in money laundering of hundreds of thousands of dollars, you stole hundreds of thousands of dollars that was owed to the Government in payroll taxes when you failed to pay those taxes.

Christopher first contends that the court erroneously assumed that he was not charged with bribing union officials because there is no evidence in the record that he ever bribed a union official except in connection with his authorized undercover activities. But the court specifically read into the record Christopher's admission in the *Jones* case that he bribed union officials without the FBI's knowledge or authorization. Because the court relied on accurate information that, under 18 U.S.C. § 3661,[1] it was entitled to consider for sentencing purposes, this claim fails.

Christopher next claims that the court wrongly believed that the government could have charged him with defrauding Cosmopolitan Bank because the government admitted that it never had a "prosecutable" case against Christopher. But the district court stated that Christopher was never charged with bank fraud, not that the government had a prosecutable case. Because Christopher clearly admitted to defrauding the bank out of $2.5 million, and he was never charged for that crime, the court's statement is accurate.

Christopher next argues that the court wrongly believed that he was not charged with his tax crimes (failure to pay income and payroll taxes and file tax returns) because he was already charged with those crimes in Counts Two and Three of the Information. But the court did not state that Christopher was not charged with his tax crimes; the court stated that Christopher had not paid taxes on over $650,000 of income he received from the Government since 1992, had not filed personal income tax returns for some years, and that he failed to pay hundreds of thousands of dollars in payroll taxes. Thus, the district court considered, for sentencing purposes, the magnitude of Christopher's conduct underlying his charged offenses, which is certainly proper under 18 U.S.C. § 3661. *See* U.S.S.G. § 1B1.4; *see also United States v. Coonce*, 961 F.2d 1268, 1274 (7th Cir.1992).

Additionally, Christopher asserts that the district court erroneously believed that he laundered money but was not charged with that crime. According to Christopher, there is no evidence in the record that he engaged in money laundering activity or that the government had a prosecutable case against him. But the record provides that Christopher admitted that he knowingly laundered $200,000 for the mob, that the government never charged him with that crime, and that the district court never asserted that the money laundering crime was prosecutable. The district court may consider uncharged crimes for the purpose of imposing a sentence, regardless of whether the government has established that the criminal conduct was prosecutable. *See* 18 U.S.C. § 3661. Christopher has not shown that the court's

---

1. "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

statement was incorrect, and thus this claim is unavailing.

In his next argument, Christopher contends that "if the District Court thought that this [the Marlboro crime] was another crime which went uncharged," then the court relied on inaccurate information. This perfunctory and hypothetical argument is unclear, and thus waived. *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir.2000) (perfunctory and undeveloped arguments are waived). Furthermore, this claim fails because the record clearly demonstrates that the court knew that Christopher was charged with the Marlboro bankruptcy.

Finally, Christopher claims that the fact that the district court imposed two conditions of his supervised release without stating them at the sentencing hearing further demonstrates that he was not sentenced on accurate information. But Christopher fails to explain how the court's failure to articulate the supervised release conditions at the hearing demonstrates that the court relied on inaccurate information when it denied the government's § 5K1.1 motion, and thus this claim is waived as well.[2] *See Lanzotti*, 205 F.3d at 957.

We conclude that Christopher has failed to demonstrate that the district court relied on inaccurate information when it declined to grant a downward departure of his sentence, and thus his due process

claim fails.[3] Christopher's conviction and sentence are AFFIRMED.

---

2. Christopher's additional claim—that his due process rights were violated when the sentencing court imposed two conditions on his supervised release without announcing them in open court—is waived because it was raised for the first time in his reply brief. *Holman v. Indiana*, 211 F.3d 399, 405 n. 5 (7th Cir.2000).

3. It is also questionable whether we have jurisdiction over this appeal pursuant to *United States v. Chavez–Chavez*, 213 F.3d 420 (7th Cir.2000), because the court imposed a sentence (and declined to depart downward) within the Guideline range. Because it is dispositive that Christopher's claim fails because he has not demonstrated that the court relied on inaccurate information, we decline to address the *Chavez–Chavez* issue.

