In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 06-1820

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EDDIE LEE,

*Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 CR 50048—**Philip G. Reinhard**, *Judge.*

---

ARGUED FEBRUARY 9, 2007—DECIDED SEPTEMBER 17, 2007

---

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury found Eddie Lee guilty of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Lee to 120 months' imprisonment. On appeal, Lee argues that his conviction should be overturned because the district court erred in making several evidentiary rulings. He also argues that 18 U.S.C. § 922(g)(1) exceeds the scope of Congress' authority under the Commerce Clause. For the following reasons, we affirm Lee's conviction.

## I. Background

On April 18, 2004, the Rockford Police Department received a report that multiple gunshots had been fired in the area of Garfield and Winnebago Streets at approximately 9:00 p.m. and that a white Ford Taurus was involved. Officers Michael Garnhart and Amado Soria were on patrol at approximately 2:23 a.m. on April 19, 2004 when they received a radio transmission stating that gunshots had been fired in their immediate vicinity and that a white Ford Taurus was involved. A few minutes later, they saw a white Ford Taurus and followed it until it pulled into a residential driveway at 622 Avon Street.

When the officers activated the police vehicle's overhead emergency lights, the driver of the Taurus, later identified as Corey Francis, got out of the Taurus with a black gun in his hand and fled. Officer Soria chased Francis behind the residence. Lee got out of the passenger side of the Taurus, and Officer Garnhart ordered him to stop. When Lee turned around, Officer Garnhart saw him holding a white "do-rag," a cloth head-covering, in one of his hands. Officer Garnhart ordered Lee to step forward and lie on the ground. Lee complied, lying face down on the ground between the sidewalk and the street. As Lee was on the ground, Officer Garnhart received a radio call from Officer Soria, who said that Francis had dropped his handgun while running behind the residence. Officer Soria recovered the gun dropped by Francis.

Meanwhile Officer Garnhart saw Francis running from behind the house and placed Lee in handcuffs and locked him in the back of the police vehicle. Officer Garnhart then pursued Francis on foot.

Rockford Police Officer Melissa Sundly had heard the traffic stop on her police radio when Officers Garnhart and Soria initially pulled behind the Ford Taurus at

622 Avon Street. She arrived at 622 Avon Street a few minutes after the other officers and secured the Taurus, making sure that there was no one hiding in the vehicle and that there were no weapons in view. She found a spent shell casing in the passenger compartment of the vehicle but no weapons. Approximately five minutes after she had arrived at the scene, she observed two women come out of the residence at 622 Avon Street. She also observed a white do-rag on the ground near the Ford Taurus but did not notice any firearm under the do-rag.

Officer Garnhart apprehended Francis with the help of other officers and returned to 622 Avon Street approximately five minutes after locking Lee in the police vehicle. As Officer Garnhart reached down to retrieve Lee's white do-rag, he observed a handgun on the ground partially covered by the do-rag. The gun and do-rag were in the same location where he had earlier ordered Lee to lie face down on the ground. Officer Garnhart had not searched Lee or the surrounding area prior to placing him in the police vehicle and pursuing Francis.

After seeing the handgun underneath the do-rag, Officer Garnhart took photographs of the gun and do-rag. Officer Soria then picked up the gun, a Llama .32 caliber pistol, and removed its ammunition. Officers Garnhart and Soria searched Lee and took him to Winnebago County Jail.

At trial, the parties stipulated that Lee had been convicted of a prior felony. In addition to the testimony of Officers Garnhart, Sundly, and Soria, the government presented the testimony of Special Agent John Richardson, an expert in the interstate nexus of firearms, who testified that the handgun recovered from beneath the do-rag had been manufactured in Spain and therefore had traveled in interstate and foreign commerce prior to its recovery in Illinois. The government presented evidence

that there was gunshot residue on the cuff of the denim jacket that Lee was wearing at the time of his arrest. The government also presented the testimony of a fingerprint expert, who testified that a partial fingerprint found on the handgun was not Francis' print but could be Lee's, the police officers who had handled the gun, or millions of other individuals who possess similar fingerprint characteristics.

The government also called Nisheikia Foat to testify. She resided at 622 Avon Street and was pregnant with Lee's child on the morning of Lee's arrest. Foat testified that she walked out of her residence when the police officer had Lee on the ground. She testified that she did not see any other individuals approach the area where the gun was recovered from the time Lee was placed in the police vehicle until the time Officer Garnhart recovered the gun. Contrary to the officer's testimony, she testified that it took about an hour from the time she went outside until she saw the police officer pick up the do-rag.

Foat also testified that she had received a letter from Lee in the summer of 2004. In the letter, Lee asked Foat to find witnesses to testify falsely that they had seen an individual other than Lee run by and throw a gun on the ground in the same location where the officers had recovered the gun.

Lee's defense at trial was essentially that the recovered handgun did not belong to him and that he was at the wrong place at the wrong time on the morning of his arrest. He claimed that he had met Francis just a few minutes prior to his arrest and that he had been with other people the entire day. He explained to the jury that he was at a friend's house at approximately 2:30 a.m. when he asked some women that he knew to ask Francis to give him a ride home. Lee said that Francis agreed and, that as they approached Avon Street in Francis' white Ford Taurus, they saw a police van. Lee testified that

after seeing the police, Francis started "acting panicky" and kept saying that he was ready to "high speed chase." Lee said that he then told Francis that he wanted to get out of the car and to pull into the driveway at 622 Avon Street. Lee testified that after Francis pulled into the driveway, jumped out of the vehicle, and took off running, he got out of the vehicle and obeyed the officer's instructions: he lay down on his stomach with his hands extended in front of him. Lee denied that he was holding a do-rag in his hands and denied that he had a gun when he got out of the Taurus.

The jury did not believe Lee's story; they found him guilty of being a felon in possession of a firearm, and he was sentenced to 120 months' imprisonment on March 9, 2006. This timely appeal followed.

## II. Discussion

On appeal, Lee argues that the district court abused it discretion by (1) barring testimony regarding two shooting incidents that occurred prior to his arrest; (2) permitting testimony from the government's gunshot residue expert when the government failed to maintain a chain of custody to protect Lee's jacket from contamination; (3) barring his witness from testifying as a gunshot residue or fingerprint expert; (4) permitting testimony from the government's fingerprint expert; and (5) limiting the cross-examination of the government's fingerprint expert. He also argues that there is no sufficient nexus between the charged offense and interstate commerce. We will address each issue in turn.

### A. Relevancy of the Prior Shootings

Lee first argues that the district court erred in excluding testimony from witnesses about shootings that occurred

prior to his arrest. At trial, Officers Garnhart and Soria informed the jury that they stopped the Ford Taurus on the morning of Lee's arrest because they had received a radio transmission to stop the vehicle for unrelated reasons. The district court found that the evidence of the two prior shootings was not relevant to why the car was stopped and would not make the existence of any fact of consequence more or less probable. We review rulings on the admissibility of evidence for abuse of discretion; further, even if the district court made a mistake, we will not reverse if the error was harmless. *United States v. Holt*, 460 F.3d 934, 936 (7th Cir. 2006).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, waste of time, or misleading the jury. . . ." Fed. R. Evid. 403.

Lee contends that evidence that a white Ford Taurus was involved in one or more shootings on April 18 and 19, but that he was not present or involved in any such shootings, would make it less probable that Lee possessed a gun, fired a gun, or was present when a gun was fired on the morning of his arrest. Lee is correct. However, the testimony from the victims of the shootings would *not* establish that Lee was not involved. The most that Lee could establish was that none of the victims of the shootings implicated him in the shooting. We agree with the district court that the evidence of the prior shootings was not relevant to whether Lee possessed a firearm at the time that he got out of the Taurus and was approached by Officer Garnhart.

Lee also contends that evidence that the Taurus had been involved in prior shootings would make it more

probable that any gunshot residue found on his jacket came from inside the Taurus and not while he was possessing a gun. Maybe. Evidence that the Ford Taurus had been involved in prior shootings would be relevant to establish that there may have been gunshot residue in the interior of the vehicle, which would help explain how Lee's jacket could have contacted gunshot residue without Lee possessing or firing a handgun.

Nevertheless, any error was harmless. Indeed, Lee was able to offer several explanations as to why he had gunshot residue on his jacket, including the fact that residue could have gotten on his jacket while he was in the Taurus. During the cross-examination of Officers Sundly and Soria, Lee's attorney elicited testimony that the officers found a spent shell casing in the Ford Taurus. The government's gunshot residue expert told the jury that he could not state for certain that the defendant possessed or fired a firearm on the morning of his arrest. He explained that residue could have transferred to Lee's jacket if it had contacted residue in the interior of the Ford Taurus; if Lee had been standing in close proximity to someone else when he/she fired a gun; if the jacket had contacted residue in a clothing bag at the jail; or if the handcuffs that the police officers used on him had previously been exposed to gunshot residue.

Additionally, substantial evidence established Lee's guilt. Officer Garnhart testified that Lee got out of the Taurus holding a white do-rag. The gun was found underneath the white do-rag in the same area where Lee had been face down on the ground. Foat testified that she had not seen any other individuals in the area where the gun and do-rag had been recovered. Finally, Lee's credibility was substantially impeached when he acknowledged that he had asked Foat to locate one or two witnesses to testify falsely that they saw an individual other than Lee drop a gun in the area where he had been apprehended. Considering the totality of the evidence against Lee, any

error in precluding evidence of the prior shootings was harmless.

## B.  Chain of Custody of Lee's Jacket

Lee next argues that the district court erred by admitting Lee's jacket. He contends that the testimony of the government's gunshot residue expert, Robert Berk, regarding the gunshot residue found on the cuff of his jacket was unreliable because the government failed to protect the jacket from contamination by maintaining a proper chain of custody.

A district court's evidentiary rulings concerning the chain of custody for physical exhibits are reviewed for abuse of discretion. *United States v. Moore*, 425 F.3d 1061, 1071 (7th Cir. 2005). "'The standard for the admission of exhibits into evidence is that there must be a showing that the physical exhibit being offered is in substantially the same condition as when the crime was committed.'" *Moore*, 425 F.3d at 1071 (*quoting United States v. Lott*, 854 F.2d 244, 250 (7th Cir. 1988)). The government is not required to prove a perfect chain of custody, as gaps in the chain go to the weight of the evidence rather than its admissibility. *Id.* "'[T]he government need only show that it took reasonable precautions to preserve the original condition of the evidence, it does not have to exclude all possibilities of tampering with the evidence . . . . [A] presumption of regularity exists with respect to official acts of public officers and, absent any evidence to the contrary, the court presumes that their official duties have been discharged properly.'" *Id.* (*quoting Lott*, 854 F.2d at 250).

After Lee's arrest, his jacket was placed into a cloth, personal property bag at Winnebago County Jail with all of his personal belongings. The personal property bags at the jail are reused from one inmate to the next without

being sterilized or laundered between each use. Lee's jacket was removed from the personal property bag and placed into a plastic bag. It is unknown who removed Lee's property from the cloth bag, but a Rockford Police Department detective removed Lee's property from the plastic bag, inventoried the property, sealed the jacket in a department evidence bag, and transferred the jacket to the Illinois State Police to have it tested for gunshot residue. Lee objected to the admission of the jacket, arguing that the government had failed to take reasonable precautions to preserve its original condition. He argued that gunshot residue could have transferred from the personal property bag to his jacket and that his personal property should not have been transferred from the cloth bag to the plastic bag.

Lee's arguments regarding the chain of custody and potential contamination of his jacket go to the weight of the evidence, not its admissibility. *Moore*, 425 F.3d at 1071. The district court did not err in admitting the evidence of Lee's jacket. The court allowed Lee to argue to the jury that they should place little weight on the gunshot residue testimony due to the alleged lack of proper chain of custody and the potential contamination caused by the use of the "dirty" cloth bag to store his jacket. Lee's lawyer pointed out to the jury that on cross-examination Berk had admitted that the gunshot residue found on Lee's jacket could have transferred to the jacket after coming into contact with gunshot residue in the personal property bag at the jail.

## C. Expert Witnesses

### 1. Lee's tendered Gunshot Residue and Fingerprint Expert

Lee next argues that the district court abused its discretion by refusing to allow his tendered expert, Wayne

Hill, to testify as either a gunshot residue or fingerprint expert. Hill has an associate degree in police science and had worked as a law enforcement officer for 14 years. After leaving law enforcement, he started his own business that focused on homicide scene reconstruction.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which establishes two admissibility requirements for expert testimony: (1) the expert must be qualified, and (2) the subject matter of the expert's testimony must consist of specialized knowledge that will be helpful or essential to the trier of fact in deciding the case. *United States v. Lanzotti*, 205F.3d 951, 956 (7th Cir. 2000). The district court has broad discretion in determining the competency of a witness as an expert. *Id.* We review a district court's decision to admit expert testimony for an abuse of discretion. *United States v. Young*, 316 F.3d 649, 656 (7th Cir. 2002).

The district court determined that Hill lacked the experience and training necessary to assist the jury in understanding how gunshot residue can transfer from one surface to another and how gunshot residue found only on the right cuff of Lee's jacket suggests that he had not recently fired a gun. We agree. Hill testified that he had never been asked to conduct testing for purposes of ascertaining the properties or characteristics of gunshot residue and that he had neither the training nor experience necessary to conduct the actual testing of an object for the presence of gunshot residue.

We also agree with the district court's refusal to allow Hill to testify that the partial fingerprint found on the recovered gun was unsuitable for comparison. Hill was not a qualified expert; he had no formalized training or experience in the analysis of fingerprints. Hill admitted during voir dire that he did not have the necessary experience to render an opinion as to whether the latent print lifted from the handgun was suitable for comparison.

Because Hill was not qualified as either a gunshot residue or fingerprint expert, the district court did not err in barring his testimony.

### 2.   The Government's Fingerprint Expert

Lee next contends that the district court erred in allowing the testimony of the government's fingerprint expert, Stephanie Bodine. The fingerprint on the handgun recovered by the police was a partial fingerprint, suitable for comparison but not for identification purposes. Bodine testified that based on her comparison of the latent print on the firearm with Francis' fingerprints, she was able to eliminate Francis as the individual who left the print on the gun. After comparing the latent print to Lee's fingerprint, Bodine was unable to exclude or identify Lee as the individual who left the print on the gun. Lee argues that Bodine's testimony was irrelevant because it would not demonstrate that it was more probable that Lee possessed the gun.

The district court disagreed and found Bodine's testimony relevant. The district court ruled that the government could present evidence that the partial print was suitable for comparison rather than identification purposes, that Francis had been eliminated as the individual who left the print on the gun, and that Lee had not. We agree with the district court that the fact that Francis had been excluded as the individual who left the partial fingerprint on the gun was relevant.[1]

---

[1]  Lee also argues that the district court erred by refusing his request that the police officers involved in the investigation submit their fingerprints for analysis. We disagree. The fingerprint on the handgun recovered by the police was suitable for

(continued...)

Lee next argues that the district court erred by precluding him from cross-examining Bodine concerning the fact that she had asked six other scientists at her laboratory to review the partial fingerprint from the recovered gun and one of those analysts believed that the partial print was not suitable for comparison. When Lee's counsel indicated to the court that he intended to cross-examine Bodine on the fact that she had consulted with the other fingerprint analysts, the government made a hearsay objection, arguing that cross-examination on this point would only be admissible if Bodine's consultation with the other analysts was part of the basis of her opinion. We review district court rulings on hearsay objections for an abuse of discretion. *United States v. Dumeisi*, 424 F.3d 566, 574 (7th Cir. 2005).

Federal Rule of Evidence 705 provides that an "expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination." The bases of opinion testimony by experts is governed by Federal Rule of Evidence 703, which in part provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not

---

[1] (...continued)

comparison but not for identification. Thus, comparing the latent print on the gun to the officer's fingerprints only could have excluded the possibility that the print was left by one of the officers, which would have been detrimental to Lee's case.

be admissible in evidence in order for the opinion or inference to be admitted.

The district court conducted voir dire to determine whether Lee could conduct cross-examination of Bodine on this point. Bodine stated that after she concluded that one of the latent prints on the firearm was suitable for comparison, she asked six other analysts in her laboratory to review the print. She testified that she had considered the opinions of the six analysts in reaching her conclusion that the print was suitable for comparison. Here, the district court barred Lee from cross-examining Bodine regarding the opinions she obtained from the other fingerprint analysts. The court found that such opinions were inadmissable hearsay:

> [I]n many cases the expert is relying on his or her own opinion, and that is proper. In some cases the expert relies on outside data that is used to form her conclusion. In this case [Bodine] is using the same data that these other experts in her same office use. There's nothing new in terms of the evidence that this expert relied on. She is just confirming her own expert opinion by asking other experts to look over the same information and give her a confirming opinion or not.

> In my opinion that is not what is contemplated by admission of this evidence under Rule 703, and it is therefore hearsay, and I would deny cross-examination . . . . And I say that because the government could in every case piggy back its own expert's opinion by saying, well, we always have a second fingerprint expert look at it, as well, and that confirmed my examination.

Bodine testified that she considered the opinions of the other analysts but did not base her conclusion—that one of the prints on the gun was suitable for comparison—on

the other analysts' opinions. Rather, she confirmed her conclusion. Although the call is close, we find that the district court did not abuse its discretion in barring Lee from cross-examining Bodine regarding the opinions of the six analysts.

At any rate, any harm from denying cross-examination on this point was limited and does not warrant reversal. Bodine explained to the jury that the partial fingerprint left on the gun could have been left by Lee, the police officers who had handled the gun, or millions of other individuals with similar fingerprint characteristics.

### D.  Interstate Commerce

Finally, Lee argues that the charged offense did not affect interstate commerce. In order to violate 18 U.S.C. § 922(g)(1), a defendant must have a prior felony conviction, posses a firearm, and the firearm must have traveled in interstate commerce prior to the defendant's possession of it. *United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007). Lee does not dispute Special Agent Richardson's testimony that the firearm recovered from underneath the do-rag had been manufactured in Spain and therefore had traveled in interstate and foreign commerce prior to its recovery in Illinois. "Movement in interstate commerce is all the Supreme Court requires under the statute." *United States v. Jackson*, 479 F.3d 485, 492 (7th Cir. 2007) (*citing Scarborough v. United States*, 431 U.S. 563, 577, 97 S. Ct. 1963, 52 L. Ed. 582 (1977); *United States v. Williams*, 410 F.3d 397, 400 (7th Cir. 2005)).

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

No. 06-1820                                                    15

A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*